STATE of Utah, Plaintiff and
Respondent,

v.

Howard F. FISHER, Defendant
and Appellant.

No. 18452.

Supreme Court of Utah.

March 8, 1984.

Ron. J. Yengich, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

A jury convicted defendant of second degree murder for the strangulation death of Jolene Scott, a prostitute who defendant believed was having a homosexual affair with his wife. On appeal, defendant claims that he was denied a fair trial because the prosecutor's opening statement outlined damaging testimony that was never produced at trial.

According to defendant's signed statement and trial testimony, he and Scott drove around Salt Lake City for seven or eight hours on July 7, 1980, while she "worked" at two truck stops. Thereafter, when he confronted her about his wife's whereabouts, she told him she did not know. He called her a liar and struck her. She made an inflammatory remark about the affections of his wife. A fight ensued, during which Scott "went wild." Defendant strangled her "to get her to go unconscious." As he did so, he felt her neck snap. Defendant claims he never intended to kill her.

 In his opening statement to the jury, the prosecutor outlined the anticipated testimony of defendant's friend, Edward Houser:

> Mr. Houser will testify that on several occasions after Howard Fisher's wife had left him, Howard Fisher had threatened the life of Jolene Scott, making the statement that he felt if in fact he could do away with Jolene Scott that his wife, Zacoma, would come back to him. And he indicated to Mr. Houser on not one but several occasions different methods by which he would do away with Jolene Scott and that some of those ways included strangulation.

Houser had testified at the preliminary hearing, but not to all of the matters described above. At the time of the opening statement, he had been subpoenaed to testify and was present at trial. Thereafter, he refused to testify due to threats he had received from fellow inmates at the Utah State Penitentiary. When defendant learned of Houser's refusal, he moved for a mistrial. The motion was denied. Defendant contends that Houser's failure to testify as described in the opening statement denied him his right to confront and cross-examine the "witness."

Where the State does not produce a witness whose testimony was outlined during its opening statement, we look at two factors to determine whether the conviction should be reversed. "The controlling question should be the good faith or lack of good faith of counsel in saying what he said in his opening statement and the likelihood that the opening statement was unfairly prejudicial to the defendant." *State v. Williams*, Utah, 656 P.2d 450, 452 (1982), *quoting Gladden v. Frazier*, 388 F.2d 777, 779 (9th Cir.1968).

Defendant does not contend that this prosecutor lacked good faith in his description of the anticipated testimony. Nothing in the record indicates that the prosecutor knew Houser would refuse to testify. After he learned of Houser's refusal, he made no further reference to the testimony.

Defendant relies on the second ground, insisting that he was prejudiced by the prosecutor's statements. The critical inquiry under this ground is whether the statements would have so influenced the jury that without them there was "a reasonable likelihood of a more favorable result for the defendant." *State v. Fontana*, Utah, 680 P.2d 1042, 1048 (1984), *quoting State v. Hutchison*, Utah, 655 P.2d 635, 637 (1982). *See also State v. Williams*, Utah, 656 P.2d 450, 452 (1982); *State v. Hodges*, 30 Utah 2d 367, 517 P.2d 1322 (1974); *Frazier v. Cupp*, 394 U.S. 731, 736, 89 S.Ct. 1420, 1423, 22 L.Ed.2d 684 (1969). That question turns on the nature of the statements and their relationship to the evidence introduced at trial.

Because of defendant's signed confession, which he verified on the witness stand, most of the facts surrounding the killing were not in dispute at the trial. The contested issue was defendant's intent. Houser's anticipated testimony, outlined by the prosecutor, bore directly on that vital

issue. It indicated (1) that defendant had threatened Scott's life on several occasions, (2) that he had a motive for killing her, and (3) that he had planned the murder in advance, including strangulation as one possible method.

The prosecution presented the testimony of Linda Calvin, Houser's sister.[1] She testified that defendant had threatened to kill Scott on at least two occasions and that on another occasion defendant struck Scott and had to be physically restrained. Thus, Calvin's testimony covered the first portion of Houser's expected testimony—defendant's threats to kill the victim—but not the second two portions. Calvin's testimony gave the jury a basis to infer defendant's intent to kill Jolene Scott, but that basis was not as strong as it would have been under the anticipated testimony of Houser.

▪ Defendant was charged with three variations of second degree murder: intent to kill, intent to cause serious bodily injury, and acting under circumstances evidencing a depraved indifference to human life. U.C.A., 1953, § 76–5–203(1)(a), (b), and (c). Intent to kill is a necessary element of only one of these three variations. The jury was instructed on each alternative, as well as on the lesser included offenses of manslaughter and negligent homicide. Counsel did not request separate verdict forms, *see* Utah R.Crim.P. § 77–35–21(d); *State v. Anderson*, 27 Utah 2d 276, 278, 495 P.2d 804, 805 (1972), and the general verdict did not specify which variation of second degree murder the jury relied upon.

Disregarding for a moment the possible effect of the prosecutor's statement, we conclude that there was ample independent, credible evidence to support a jury verdict on the first variation, that defendant intended to kill Scott.[2]

More importantly, defendant admitted each element of the second variation of second degree murder, where death results from an act "clearly dangerous to human life" committed with the intent "to cause serious bodily injury ...." "Serious bodily injury" is "bodily injury that creates or causes ... protracted loss or impairment of the function of any bodily member or organ or creates a substantial risk of death." § 76–1–601(9). Defendant's conduct falls squarely within this variation of second degree murder. He testified that he intentionally placed his hands on the victim's neck, that he intentionally squeezed her throat, and that he intended to "get her to go unconscious." In other words, defendant intentionally committed an act that is dangerous to human life (strangulation), intending to cause serious bodily injury (protracted loss or impairment of both the heart and the brain, i.e., unconsciousness). Our holding that strangulation constitutes "serious bodily injury" is consistent with the case law on this question, cited in the footnote.[3]

▪ Where the evidence overwhelmingly supports a conviction under one variation of a crime submitted to the jury, we need not reverse a conviction even if there were erroneous instructions on another variation. *State v. Fontana, supra,* at 1048–49, and cases cited therein. Similarly, a defendant who has made "no request for an instruction which would enable him to

1. Defendant argues that Calvin had "serious problems of credibility." All of the witness's infirmities were brought out at trial. It was for the jury, not this Court, to judge her credibility.

2. For example, in *Cato v. State,* Tex.Cr.App., 534 S.W.2d 135, 137–38 (1976), a defendant was convicted of intentionally or knowingly causing his wife's death by strangulation, notwithstanding his testimony that he never intended to kill her. The only evidence of intent to kill in *Cato* was the fact of strangulation itself.

3. *State v. Blakeney,* 137 Vt. 495, 408 A.2d 636 (1979) (strangulation constituted "serious bodily injury" for purposes of aggravation element in aggravated assault conviction); *Commonwealth v. Watson,* 494 Pa. 467, 474, 431 A.2d 949, 952 (1981) ("it is beyond question that manual strangulation can result in serious bodily injury, if not death"). *Cf. State v. King,* Utah, 604 P.2d 923 (1979) (jury justified in finding "serious bodily injury" where defendant strangled victim into unconsciousness and stabbed her with a pair of scissors); *Houck v. State,* Okl.Cr.App., 563 P.2d 665 (1977) (death by strangulation constituted second degree murder).

know which theory the jury adopted" cannot complain of insufficiency of the evidence for one theory of first degree murder when there was ample evidence under either theory. *State v. Anderson*, 27 Utah 2d at 278, 495 P.2d at 805.

By analogy, the likelihood of prejudice from an opening statement as to one variation of a crime is to be considered in light of the quantum of evidence that supports another variation. Here, the evidence, including defendant's testimony and sworn statement, is adequate for his conviction of second degree murder under the variation charging intent to kill and is virtually conclusive of his conviction under the variation charging intent to inflict serious bodily injury. In light of that fact, we are unable to say that there is any reasonable likelihood that the outcome of defendant's trial would have been different without the remarks in the opening statement. Defendant was not denied his right to a fair trial.

■ As an additional ground for appeal, defendant contends that one of the court's instructions improperly defined the "depraved indifference" variation and that the statutory description of this variation is unconstitutionally vague. The instruction given on this point in this case was identical to the instruction given and sustained in *State v. Fontana, supra.* Our holding in that case disposes of defendant's argument here.

Conviction affirmed.

HALL, C.J., and HOWE, and DURHAM, JJ., concur.

STEWART, J., concurs in the result.