2011 UT App 162

**STATE of Utah, Plaintiff and Appellee,**

v.

**Frankie Arnold WHITE, Defendant and Appellant.**

**No. 20090979–CA.**

Court of Appeals of Utah.

May 19, 2011.

---

Linda M. Jones, Michael Misner, and Robert K. Engar, Salt Lake City, for Appellant.

Mark L. Shurtleff and Laura B. Dupaix, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and THORNE.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Frankie Arnold White appeals his third degree felony assault conviction, *see* Utah Code Ann. § 76–5–102 (2008); *id.* § 76–3–203.1(1), (3)(b), (4)(b) (Supp. 2010), arguing that there was insufficient evidence to support the "substantial bodily injury" finding

necessary for the assault conviction. We affirm.

## BACKGROUND [1]

¶ 2 On Monday, March 2, 2009, at approximately four o'clock in the afternoon, Dexter Moza Thomas, an African American man, boarded a northbound public transit train heading to the Gallivan Center station in Salt Lake City, Utah. White and his two cousins, Derringer Dade (Derringer) and Jamison Dade (Jamison), were already traveling on the train when Thomas boarded.

¶ 3 One of White's cousins approached Thomas on the train and asked, "Where do I know you from?" Thomas replied that they did not know each other. White's cousin insisted he knew Thomas from somewhere, and the inquiry persisted as Thomas, White, Derringer, and Jamison exited the train together at the Gallivan Center station. After Thomas responded again that he did not know White or his two cousins, White and Jamison walked away while Derringer remained by Thomas on the platform. Derringer grew irate, began cursing, shouted racial slurs, and accused Thomas of being part of a gang. Derringer began to ball up his fist as if to strike Thomas, at which time Thomas pushed Derringer away before he could throw a punch. Derringer fell off the platform and onto the ground. White and Jamison then ran back to the platform "like a pack of wolves" and attacked Thomas, knocking him to the ground and repeatedly punching him in the face, head, and chest while shouting, "We're going to kill this nigger." After one or two minutes of fighting, police officers appeared and ended the altercation. Thomas, "shaking, ... disoriented, [and] upset," sustained a "small" laceration to his right temple that bled "significant[ly]" for under thirty minutes and left his face and hands covered in blood.

¶ 4 In the meantime, White fled the scene, ignoring the commands of police officers to stop. He was quickly apprehended and taken into custody. White was charged with third degree felony assault, failure to stop at

---

1. This being an appeal from a jury verdict, we recite the facts in a light most favorable to the verdict. *See State v. Brown,* 948 P.2d 337, 339 (Utah 1997).

the command of law enforcement, and criminal trespass.

¶ 5 At trial, five months after the fight, Thomas testified as to how the fight unfolded and pointed out the "two or three inch[ ]" scar on his face that remained. The State also submitted into evidence two pictures of Thomas's injury taken thirty minutes after police broke up the fight. An eyewitness, Michael Geer, also testified, stating that he witnessed Jamison and Derringer yelling over the crowded train platform and running toward Thomas swinging their arms, as if punching. Geer testified that his view of White was obstructed and that he could not be sure if White participated in the fight at all. Officer Allison Peterson, who was on the platform at the time of the incident, testified that she observed White and his two cousins yelling, running, and subsequently punching Thomas. White testified in his own defense, explaining that he was not involved in the fight or name calling and that he merely walked, not ran, away from the scene because he was eager to get home and annoyed at Derringer's behavior in "fussing" with Thomas and the officers.

¶ 6 White was convicted of third degree felony assault. *See* Utah Code Ann. § 76-5-102 (2008) (defining assault as a class A misdemeanor when it "causes substantial bodily injury"); *id.* § 76-3-203.1(1), (3)(b) (Supp. 2010) (enhancing class A misdemeanors committed "in concert with two or more persons" to third degree felonies). He was also convicted of failure to stop at the command of an officer. *See id.* § 76-8-305.5 (2008). White now appeals the assault conviction.

## ISSUE AND STANDARD OF REVIEW

¶ 7 White argues that there was insufficient evidence to support the assault con-

viction. Specifically, he argues that Thomas's injury does not constitute a "substantial bodily injury." [2] Because this is a challenge to the jury's factual finding, White "must marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict." *State v. Boyd*, 2001 UT 30, ¶ 13, 25 P.3d 985 (internal quotation marks omitted); *see also West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991) (likening the marshaling requirement to playing devil's advocate). We will "reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he ... was convicted." *State v. Brown*, 948 P.2d 337, 343 (Utah 1997) (internal quotation marks omitted); *accord State v. Shumway*, 2002 UT 124, ¶ 15, 63 P.3d 94.

## ANALYSIS

¶ 8 The burden on the defendant in bringing a sufficiency claim is high. *See State v. Gonzales*, 2000 UT App 136, ¶ 10, 2 P.3d 954. In reviewing the evidence, we will not make "determinations regarding witness credibility[, which] are solely within the jury's province," *State v. Smith*, 927 P.2d 649, 651 (Utah Ct.App.1996) (internal quotation marks omitted). The court's inquiry ends when "there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made." *State v. Gardner*, 2007 UT 70, ¶ 26, 167 P.3d 1074 (internal quotation marks omitted).

**2.** White argues that we should apply a correctness standard of review as we would if reviewing a denial of a directed verdict motion, *see State v. Hirschi*, 2007 UT App 255, ¶ 15, 167 P.3d 503. Although a review of the trial court's ruling on a directed verdict motion would necessarily involve an analysis of the sufficiency of the evidence, we do not address the matter as an appeal from a directed verdict because White focuses his arguments on the sufficiency of the evidence to support the jury verdict and does not frame the issue as a challenge to the trial court's ruling on his motion for a directed verdict. The State also argues that we should apply a correctness standard but categorize the issue as one of statutory interpretation, *see generally Heber Light & Power Co. v. Utah Pub. Serv. Comm'n*, 2010 UT 27, ¶ 6, 231 P.3d 1203 (stating that questions of statutory interpretation are reviewed for correctness). However, we decline to use this opportunity to construe the statutory language and to determine, as a matter of law, whether Thomas's injuries constitute a substantial bodily injury. *See infra* ¶ 11 note 7.

¶ 9 Here, White satisfied his marshaling burden by providing a detailed discussion of all of the evidence, including that "which *supports* the very findings [he] resists." *Majestic*, 818 P.2d at 1315. However, before we analyze the marshaled evidence, we "begin our [sufficiency] review by setting out the elements of the crime." *Smith*, 927 P.2d at 651. Assault is defined as "an act, committed with unlawful force or violence, that causes bodily injury to another" and is considered a class B misdemeanor unless the victim suffers "substantial bodily injury," which then elevates the offense to a class A misdemeanor. Utah Code Ann. § 76–5–102. Substantial bodily injury is defined as "bodily injury, not amounting to serious bodily injury,[3] that creates or causes protracted physical pain, temporary disfigurement, or temporary loss or impairment of the function of any bodily member or organ." *Id.* § 76–1–601(12). Additionally, a class A misdemeanor assault that is found to be committed "in concert with two or more persons," a fact that is undisputed in this case, is enhanced to a third degree felony. *See id.* § 76–3–203.1(1), (3)(b), (4)(b) (Supp. 2010).

¶ 10 Thus, finding Thomas's injury to constitute a "substantial bodily injury" was the trigger necessary to convict White for a class A misdemeanor assault, *see id.* § 76–5–102 (2008), and then to enhance that misdemeanor to a third degree felony by operation of the "in concert" enhancement provision, *see id.* § 76–3–203.1(1), (3)(b) (Supp. 2010). White challenges the sufficiency of the evidence presented to support the jury's finding that Thomas's injury—a laceration to the face—constituted a substantial bodily injury, *see id.* § 76–5–102(3)(a) (2008). Here, the jury heard testimony from four witnesses: Geer, Thomas, Officer Peterson, and White. The jury instructions included information on how to weigh witness credibility, and both parties, in their closing statements, pointed out important considerations to weigh in deciding whom to believe. Based on the verdict, "[t]he jury, within its function as the arbiter of witness credibility, obviously elected to believe the version of the facts from" Thomas and Officer Peterson, rather than the testimonies of Geer and White. *See Smith*, 927 P.2d at 652. Although inconsistencies existed within Thomas's testimony and between Thomas's and Officer Peterson's testimonies,[4] both witnesses described White as involved in the fight and actively landing punches. From these testimonies, the jury had sufficient evidence to convict White of simple assault.[5] *See* Utah Code Ann. § 76–5–102(1)(c) (defining assault as "an act, committed with unlawful force or violence, that causes bodily injury to another").

¶ 11 Next, in deciding whether Thomas's injury constituted a "substantial bodily injury," the jury, relying on the testimonies of Thomas and Officer Peterson, had to consider whether a "small" facial laceration that bled significantly, continued to bleed for up to thirty minutes, and left a two to three inch scar visible at trial five months later constituted a "bodily injury ... that creates or causes protracted physical pain, temporary disfigurement, or temporary loss or impairment of the function of any bodily member or organ." Utah Code Ann. § 76–1–601(12) (2008). Although, the scar from the laceration was still visible at trial, the prosecutor had to ask Thomas to specifically point it out to the jury, stating that it "may not be

3. "Serious Bodily Injury" is defined as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." Utah Code Ann. § 76–1–601(11) (2008).

4. For instance, Thomas believed that only White and Jamison were punching him and that Derringer remained on the ground where he landed after being pushed. Officer Peterson, on the other hand, testified that all three men were punching Thomas.

5. White argues that the pictures of Thomas's injury taken shortly after the fight unequivocally refute Thomas's description of the injury and scar. While the pictures could reasonably be construed to depict a minor injury, not only are we are unable to view the condition of Thomas's scar as it was presented to the jury, but we also consider the interpretation of the pictures and scar, and any comparisons to be made between the two, to be a factual matter best left to the jury. *See State v. Boyd*, 2001 UT 30, ¶ 14, 25 P.3d 985 ("[T]he existence of contradictory evidence or of conflicting inferences does not warrant disturbing the jury's verdict." (internal quotation marks omitted)).

apparent" and may only be temporary.[6] The jury was also provided the legal definition of "substantial bodily injury" in the jury instructions. Evidence of "protracted physical pain" and "impairment of the function of any bodily member or organ" was not presented, leaving the jury to consider only whether the scar constituted a "temporary disfigurement."[7] *Id.* "Accordingly, considered from a perspective most advantageous to the verdict," *see Smith,* 927 P.2d at 652, the State did present "some evidence, including reasonable inferences, from which" the jury could reasonably find White assaulted Thomas and inflicted upon him a substantial bodily injury—a two to three inch facial scar, *see Gardner,* 2007 UT 70, ¶ 26, 167 P.3d 1074 (internal quotation marks omitted); *see also* Utah Code Ann. § 76–5–102(3)(a) (2008).

## CONCLUSION

¶ 12 We hold that the jury was presented with sufficient evidence from which it could conclude that White committed an assault that resulted in substantial bodily injury. Therefore, we affirm.

¶ 13 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge, and WILLIAM A. THORNE JR., Judge.

---

**6.** White sought no instruction on the lesser included offense of class B misdemeanor assault requiring only simple bodily injury, *see* Utah Code Ann. § 76–5–102(1)–(2) (2008), and at oral argument argued that he was somehow precluded from seeking that instruction. White, however, was precluded from doing so only by his own theory of the case—that he was not involved in the fight. We therefore decline to address the issue.

**7.** Because we decline to view this case as presenting a question of statutory interpretation, and because the statute itself does not define "temporary disfigurement," we give broad deference to the jury's common sense understanding of this phrase. *See State v. Day,* 572 P.2d 703, 705 (Utah 1977) (determining that "depraved" and "indifference" were not technical terms and presuming "that jurors have ordinary intelligence and understand the meaning of ordinary words"); *cf. State v. Moore,* 802 P.2d 732, 739 (Utah Ct.App.1990) ("[D]eference is especially appropriate where the fact finder is a jury, whose common sense is a valued buffer between the parties.").