**2018 UT App 239**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TRAVIS LEE DOYLE,
Appellant.

Opinion
No. 20170024-CA
Filed December 28, 2018

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 111900760

Diana Pierson, Maren E. Larson, and Sarah J.
Carlquist, Attorneys for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

POHLMAN, Judge:

¶1     Travis Lee Doyle appeals his conviction for aggravated assault. He contends that there was insufficient evidence to disprove his claim of self-defense beyond a reasonable doubt. We affirm.

BACKGROUND[1]

¶2     On Christmas Eve 2010, Victim went to a party with his girlfriend (Girlfriend). The party was hosted by Girlfriend's uncle (Uncle) and included about two dozen guests, mostly Girlfriend's family. Uncle also invited Doyle, who attended the party with two friends. Girlfriend knew Doyle growing up, but Victim had never met him.

¶3     While Doyle, Girlfriend, and Victim were together in Uncle's kitchen, Girlfriend introduced Victim and Doyle. Victim, who had been keeping to himself, looked up as Girlfriend introduced him as her "old man." Victim smiled and said, "Hello," and Doyle responded, "Are you looking at me funny?" or, "You looking at me crazy fool?" Victim shook his head and said, "No," looking down to avoid a confrontation. According to Girlfriend, all three of them looked away and she thought they "were all cool."

¶4     The next thing Victim remembered was waking up on the kitchen floor. He did not remember getting punched but felt pain "shooting through [his] eye and the left side of [his] face." At trial, Girlfriend recalled that Doyle "cold clocked" Victim after they had all looked away. The punch knocked Victim "out cold," and Girlfriend testified that Doyle started hitting and kicking Victim while he lay unconscious on the floor. Girlfriend tried to stop the assault, but Doyle's two friends joined the attack and she was eventually pulled out of the kitchen by her cousin.

---

1. "When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and we recite the facts accordingly. We present conflicting evidence only when necessary to understand issues raised on appeal." *State v. Tulley*, 2018 UT 35, ¶ 4 n.1, 428 P.3d 1005 (quotation simplified).

In the fracas, Girlfriend was punched and had a tooth knocked out, but she did not know who hit her. Girlfriend later testified that the beating of Victim lasted for, what seemed to her, two to three minutes.

¶5     The other partygoers heard the commotion coming from the kitchen, and Girlfriend's family rushed to the scene and helped Victim. As people moved out of the kitchen, Uncle confronted Doyle to figure out what happened. Doyle was "hyped up" and "[r]eally aggressive" and told Uncle that Victim had disrespected him and "was giving him dirty looks" when the two were introduced. Doyle did not claim that Victim had acted aggressively toward him or that Doyle was defending himself.

¶6     Girlfriend's cousin also confronted Doyle, asking him if he hit Girlfriend. Doyle made "some cocky ass response" like, "You know I did." Sensing additional impending trouble, another partygoer (J.G.) stepped between them to prevent another fight. But when J.G. turned his back to Doyle, Doyle punched him in the back of the head. Another fight started, and Doyle's two friends again joined the fray. Someone called the police, and Doyle and one of his friends left, leaving the other friend behind.

¶7     Doyle was not gone for long. J.G. went outside to escape the "craziness" with his girlfriend, who was eight months pregnant. As she and J.G. were talking, Doyle and his friend approached them and started "talking crazy." J.G. and the pair again exchanged blows, and the friend took a swing at the girlfriend's stomach. J.G. was able to block the swing but was knocked down. Doyle yelled, "I'm going to try to catch a murder charge," and then he jumped in the car with his friend and left. The police arrived less than one minute later.

¶8 Victim later returned home, deciding not to go to the hospital that night because it was Christmas Eve. The next morning, he woke up and had Christmas with his kids but was in "an extreme amount of pain." Girlfriend took him to the emergency room, where he was referred to a plastic surgeon (Doctor). Doctor found that Victim had suffered numerous bone fractures around his left eye, but delayed surgery for more than two weeks due to swelling. When Doctor was able to perform the surgery, it took eleven hours to repair the damage to Victim's face and position three permanent titanium plates and one biodegradable plate. Doctor later testified at trial that, although it was possible Victim's injuries were caused by a single punch, it would have required a "significant amount of force." Based on his experience, Doctor was ultimately unsure how many times Victim was hit.

¶9 Due to his injuries, Victim did not return to work for nearly two months, lived off a liquid diet for two weeks, and was unable to communicate without pain and discomfort. To this day, Victim suffers from migraines and vision loss, conditions he never had before the incident.

¶10 The State charged Doyle with aggravated assault resulting in serious bodily injury, a second degree felony, and included an in-concert enhancement.[2] At trial, Doyle argued

_____

2. Doyle was charged with aggravated assault under Utah Code section 76-5-103. Utah Code Ann. § 76-5-103(2)(b) (LexisNexis Supp. 2010). Under section 76-3-203.1, a defendant is subject to an "enhanced penalty" for assault "if the trier of fact finds beyond a reasonable doubt that the person acted . . . in concert with two or more persons." *Id.* § 76-3-203.1(2)(a), (5)(b). If the enhanced penalty applied to Doyle, it would have elevated his crime from a second degree felony to a first degree felony. *See id.* § 76-3-203.1(4)(d).

self-defense, claiming that Victim threatened him with a beer bottle. Doyle testified that immediately after Girlfriend introduced them, Victim "turned around and grabbed a bottle off the counter" and raised it above his head in a threatening manner. To defend himself, Doyle hit Victim one time and then was "jumped" by Girlfriend's family. At the end of trial, Doyle moved for a directed verdict, arguing that the State did not meet its burden of disproving self-defense. The trial court denied the motion and found that there was a "disputed issue" as to self-defense that should go to the jury. The court instructed the jury on self-defense, explaining that the prosecution had the burden to "prove beyond a reasonable doubt that the defense [did] not apply." After a two-day trial, the jury found Doyle guilty of aggravated assault but rejected the in-concert enhancement. Doyle appeals.

ISSUE AND STANDARD OF REVIEW

¶11    Doyle asks us to reverse his conviction for aggravated assault, contending that the trial court should have granted his motion for a directed verdict because there was insufficient evidence to disprove his claim of self-defense. "We review a trial court's ruling on a motion for directed verdict for correctness." *State v. Gonzalez*, 2015 UT 10, ¶ 21, 345 P.3d 1168.

> When a party moves for a directed verdict based on a claim of insufficiency of the evidence, we will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt.

*State v. Hirschi*, 2007 UT App 255, ¶ 15, 167 P.3d 503 (quotation simplified).

ANALYSIS

I. Preservation

¶12    Doyle's insufficiency challenge has two components: first, that the evidence supporting his conviction and disproving his self-defense claim was "inconclusive and speculative"; and second, that in evaluating the sufficiency of the evidence against Doyle, the trial court should have disregarded Girlfriend's testimony as "inherently improbable." The State counters that these issues were unpreserved. It acknowledges that Doyle moved for a directed verdict in the trial court but argues that he did not preserve his sufficiency challenges "because his blanket objections below . . . were not specific to the claims he now raises."

¶13    To preserve an issue for appeal, a party must present it "to the trial court in such a way that the trial court has an opportunity to rule on that issue." *State v. Gallegos*, 2018 UT App 112, ¶ 14, 427 P.3d 578 (quoting *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801). This means that a party must raise the issue "specifically" and "in a timely fashion," and support the argument with "evidence or relevant legal authority." *Id.* (quotation simplified). There is no dispute that Doyle's motion for a directed verdict was timely, but we must decide whether the issues were specifically raised and supported by relevant authority.

¶14    We conclude that Doyle's motion for a directed verdict preserved his inconclusive-and-speculative challenge but did not preserve his distinct claim that Girlfriend's testimony should have been disregarded in its entirety as inherently improbable.

A.    Inconclusive and Speculative

¶15    On appeal, Doyle contends that the evidence relevant to his self-defense claim was "inconclusive and speculative,"

raising several arguments in support. *See infra* Part III. To support his claim that these arguments were preserved, Doyle relies principally on *State v. Gonzalez*, 2015 UT 10, 345 P.3d 1168, and *State v. Gallegos*, 2018 UT App 112, 427 P.3d 578. Under those cases, Doyle maintains that his arguments regarding the sufficiency of the evidence to disprove self-defense were clear from the context of the directed verdict motion. *See Gonzalez*, 2015 UT 10, ¶ 26 ("When the specific ground for an objection is clear from its context, the issue is preserved for appeal."). And although he makes more developed arguments on appeal, he asserts that the arguments below "were not 'so tangential that [they do] not mirror [the] specific arguments on appeal.'" (Quoting *Gallegos*, 2018 UT App 112, ¶ 16.) The State, in response, relies primarily on *State v. Bosquez*, 2012 UT App 89, 275 P.3d 1032, and contends that Doyle's "general assertions" below failed to "assert the specific argument[s] raised on appeal." (Quoting *Bosquez*, 2012 UT App 89, ¶ 8.)

¶16 Regarding Doyle's more generalized argument challenging the self-defense evidence as inconclusive and speculative, we agree that this case more closely resembles *Gonzalez* and *Gallegos* than *Bosquez*. As in *Gallegos*, Doyle's arguments on appeal merely present the self-defense argument from below "with more flesh on the bone." *See* 2018 UT App 112, ¶ 16. In his motion for a directed verdict, Doyle argued that the State had the burden to disprove self-defense and that it had to "present more than [it] ha[d]" to meet that burden. In Doyle's view, his testimony that he was threatened by Victim was never disproven. These arguments were tersely made, but were presented in context of the two-day trial in which self-defense was an important issue. In his motion, Doyle did not identify every perceived defect in the State's evidence, but it was clear he was arguing that the evidence presented was too inconclusive and speculative to disprove self-defense. This basic theory—that the State did not disprove that Doyle acted in self-defense—has not changed. *See State v. Johnson*, 2017 UT 76, ¶ 14 n.2, 416 P.3d

443 (explaining that, once through the preservation door, "new arguments" are allowed but "new legal theories" are not). Thus, the issue was "presented to the trial court in such a way that the trial court ha[d] an opportunity to rule on [it]." *See Gallegos*, 2018 UT App 112, ¶ 14 (quotation simplified). Because the issue was preserved, we will reach it on its merits. *See infra* Part III.

B.     Inherent Improbability

¶17     We reach a different conclusion, however, on Doyle's inherent-improbability argument. Under *State v. Robbins*, 2009 UT 23, 210 P.3d 288, a court may disregard testimony that is "inherently improbable" when determining whether there is sufficient evidence for a conviction. *Id.* ¶ 13. The inherent improbability doctrine has very limited applicability and comes into play "only in those instances where (1) there are material inconsistencies in the testimony and (2) there is no other circumstantial or direct evidence of the defendant's guilt." *Id.* ¶ 19; *see also State v. Prater*, 2017 UT 13, ¶ 38, 392 P.3d 398 (explaining that the *Robbins* court relied on "inconsistencies in the [witness's] testimony *plus* the patently false statements the [witness] made *plus* the lack of any corroboration").

¶18     On appeal, Doyle argues that Girlfriend's testimony of a "prolonged assault by multiple attackers was inherently improbable" and that, in evaluating the sufficiency of the evidence, the trial court should have disregarded her testimony in its entirety under *Robbins*. In support, he asserts that Victim's injuries were inconsistent with Girlfriend's version of events: Victim had injuries only to the face with no other injuries to his body. According to Doyle, if Girlfriend's account were true—that Victim was punched and kicked for two to three minutes by three attackers—Victim would have had more serious injuries. In addition, Doyle asserts that Girlfriend's testimony was "patently false" and "uncorroborated." For these reasons, he

maintains that Girlfriend's testimony cannot sustain the jury's verdict.

¶19   This goes far beyond what was argued in the motion for a directed verdict. *Robbins* may be a component of an insufficiency challenge, but not every insufficiency challenge raises a *Robbins* issue. Doyle's contention that the trial court should have evaluated the sufficiency of the evidence without Girlfriend's testimony does not merely add "more flesh on the bone." *See State v. Gallegos*, 2018 UT App 112, ¶ 16, 427 P.3d 578. Instead, it introduces a new legal theory: that the insufficiency should be reviewed only *after* Girlfriend's testimony is ignored as "inherently improbable." And unlike the arguments above, *supra* Part I.A., it would not have been clear from context that the motion for a directed verdict was making a *Robbins* challenge. Instead, the motion centered on the State's burden of proof and its alleged failure to disprove Doyle's testimony that he acted defensively based on all of the evidence presented. There was never any argument that Girlfriend's testimony was so inherently improbable that it should be disregarded before analyzing the sufficiency of the State's evidence. Thus, this particular challenge was not presented to the trial court and was not preserved for appeal. *See Gallegos*, 2018 UT App 112, ¶ 14.[3]

---

3. At the end of trial, Doyle moved for two directed verdicts. The first was reserved by Doyle's counsel at the close of the State's case-in-chief and was presented with the second at the close of all the evidence. The first motion concerned the in-concert enhancement. In that motion, Doyle argued that "there were some considerable inconsistencies as to whether or not two or more people were involved" and that Girlfriend's testimony on this point was uncorroborated. In the second motion, Doyle argued self-defense, and that the State had not met its burden to disprove that defense. The State stresses that these motions were

(continued…)

## II. Plain Error

¶20 Alternatively, Doyle contends that the trial court committed plain error by considering Girlfriend's testimony in reviewing his motion for a directed verdict. "The plain error doctrine serves as an exception to our long-standing rule that issues cannot be raised on appeal if they were not argued below at trial." *State v. Bond*, 2015 UT 88, ¶ 36, 361 P.3d 104. But we will not find plain error based on insufficient evidence unless the insufficiency is "obvious and fundamental." *State v. Prater*, 2017 UT 13, ¶ 28, 392 P.3d 398 (quotation simplified). "An example of an obvious and fundamental insufficiency is the case in which the State presents *no* evidence to support an essential element of a criminal charge." *Id.* (quotation simplified).

¶21 In *Prater*, our supreme court reviewed the inherent improbability of witness testimony for plain error. *Id.* ¶ 27. And there, the court emphasized that "the usual course" is to allow "the jury to assess the credibility of witness testimony." *Id.* ¶ 43. Only when testimony is "inherently improbable," that is, "incredibly dubious and, as such, apparently false," can the issue be taken from the jury. *Id.* ¶¶ 32–33.

---

(…continued)

distinct and viewed in isolation by the trial court. Doyle counters in his reply brief that "the trial court understood Doyle's second motion incorporated the facts and argument from the first motion." We do not decide whether the motions can be viewed together. Even though the first motion made references to "inconsistencies," it made no suggestion that the trial court should disregard Girlfriend's testimony as inherently improbable. Considering both motions in context, neither raised, in isolation or together, the distinct *Robbins* issue Doyle raises on appeal. *State v. Robbins*, 2009 UT 23, ¶ 13, 210 P.3d 288. Therefore, we conclude that the issue is unpreserved.

¶22 Here, it is not obvious that the inconsistencies in Girlfriend's testimony "run so counter to human experience" that it renders her testimony "inherently improbable." *See id.* ¶ 39. As to Victim's injuries being inconsistent with Girlfriend's testimony, Doctor testified that Victim's significant injuries may have been caused by a single blow, or by many. Ultimately, Doctor could not say how many times Victim was hit. Thus, this question properly went to the jury. Doyle also asserts that Girlfriend's testimony that she had a tooth knocked out during the melee is inconsistent with her statement to police several hours after the incident, where she did not report that fact. But "pre-trial inconsistent statements do not render [a witness's] testimony 'apparently false.'" *Id.* Instead, they present routine credibility questions for a jury. *Id.* Next, Doyle attacks Girlfriend's estimation that the attack lasted two to three minutes, saying this estimation is patently false because "none of her approximately twenty family members intervened" and "even the [prosecutor] acknowledged that [Girlfriend] was wrong to testify that the incident lasted for two to three minutes." Yet the record shows that Girlfriend's family *did* intervene—even Doyle claimed that he was "jumped" as soon as he hit Victim. And besides, how long the attack lasted is irrelevant; the question is whether Doyle assaulted Victim—be it for three seconds or three minutes. This is not an obvious basis to disregard Girlfriend's entire testimony.

## III. Sufficiency of the Evidence

¶23 Having concluded that Doyle preserved his insufficiency challenge as to the inconclusive and speculative nature of the evidence, we turn to the merits of that argument. In doing so, we note "[a] defendant must overcome a substantial burden on appeal to show that the trial court erred in denying a motion for directed verdict." *State v. Gonzalez*, 2015 UT 10, ¶ 27, 345 P.3d 1168. We view the evidence "in the light most favorable to the State" and will uphold the trial court's denial of a motion for a

directed verdict if "some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *Id.* (quotation simplified). We conclude that, "when viewed in the light most favorable to the State," there is indeed sufficient evidence "from which a reasonable jury could find beyond a reasonable doubt that" Doyle did not act in self-defense. *See id.* (quotation simplified).

¶24 "A person is justified in threatening or using force against another when and to the extent that the person reasonably believes that force or a threat of force is necessary to defend the person . . . against another person's imminent use of unlawful force." Utah Code Ann. § 76-2-402(1)(a) (LexisNexis Supp. 2010). "Once the jury has been instructed on self-defense, the State has the burden to prove beyond a reasonable doubt that the defendant did not act in self-defense." *State v. Lucero*, 2012 UT App 202, ¶ 6, 283 P.3d 967 (quotation simplified). In assessing reasonable doubt, we recognize that the jury is the sole "arbiter of witness credibility." *State v. White*, 2011 UT App 162, ¶ 10, 258 P.3d 594 (quotation simplified). Our "inquiry ends when there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime [could] reasonably be made." *Id.* ¶ 8 (quotation simplified). Further, "[i]nferences may reasonably be drawn from circumstantial evidence." *State v. Ashcraft*, 2015 UT 5, ¶ 18, 349 P.3d 664. "And a jury's inference is reasonable unless it falls to a level of inconsistency or incredibility that no reasonable jury could accept." *Id.* (quotation simplified).

¶25 Doyle contends that the State did not disprove his claim of self-defense because it "did not present a witness who was looking at [Victim] before Doyle punched him." Because Victim and Girlfriend were looking away before the attack, and because there were no other eyewitnesses to the events, Doyle asserts that there is no proof that Victim did not first threaten Doyle

with the beer bottle. In addition, Doyle contends that the evidence is speculative because "Doyle's behavior after the incident" does not speak to Doyle's actions in regard to Victim. We conclude both contentions lack merit.

¶26     First, there was at least one witness to the incident. Victim testified that (1) his memory of before he was hit was "[v]ery clear," (2) when Doyle asked him if he was looking at him funny, he looked away to avoid a confrontation, and (3) he "did not want to confront [Doyle]." Further, when asked whether he made "any threats toward Mr. Doyle" or did "anything aggressive towards Mr. Doyle before [he] got punched," Victim said, "No." And even assuming that Girlfriend did not witness the initial hit because she momentarily looked away after Victim and Doyle were introduced, she testified that, based on her observations and impressions, Doyle "cold clocked" Victim and that Doyle continued to hit and kick Victim while he was unconscious. At any rate, eyewitness testimony is not required to disprove self-defense. *See Salt Lake City v. Carrera*, 2015 UT 73, ¶ 11, 358 P.3d 1067 ("Circumstantial evidence alone may be sufficient to establish the guilt of the accused." (quotation simplified)). Instead, the jury, "as the arbiter of witness credibility," *White*, 2011 UT App 162, ¶ 10 (quotation simplified), could reasonably find, and in fact did find, that Victim was credible and that Doyle was the aggressor.

¶27     Second, the evidence would not require rank speculation as Doyle contends. In this regard, Doyle misapprehends the distinction between speculation and reasonable inference. This distinction was explained by our supreme court in *Carrera*: "In short, the difference between an inference and speculation depends on whether the underlying facts support the conclusion. A jury draws a reasonable inference if there is an evidentiary foundation to draw and support the conclusion." 2015 UT 73, ¶ 12. Victim testified that he did not want to fight Doyle and looked away before being punched. Girlfriend also

testified that Victim looked away after the tense introduction. The fact that Victim looked down supports the reasonable inference that Victim did not grab a bottle off the counter to attack Doyle.

¶28 Moreover, J.G. testified that Victim is "such a nice guy" and a "nonviolent kind of guy." In contrast, J.G.'s girlfriend testified that Doyle was "hyped up" and "[r]eally aggressive." This is borne out by Doyle's actions throughout the night of the party. Doyle and his friends started several fights—with Victim, with J.G., and with a woman who was eight months pregnant. And when confronted by Uncle about the events in the kitchen, Doyle did not say Victim had threatened him. Instead, more consistent with Victim's and Girlfriend's accounts, Doyle told Uncle that Victim had "giv[en] him dirty looks" and "had disrespected him." These facts support a reasonable inference that, while Victim was nonviolent, Doyle was aggressive. They also support the further inference that Doyle did not defend himself in response to an unprovoked attack from Victim, but that Doyle felt disrespected and hit Victim as Victim was looking away. In short, there is "some evidence . . . from which a reasonable jury could find" that Doyle did not act in self-defense. *Gonzalez*, 2015 UT 10, ¶ 27 (quotation simplified). Therefore, we affirm the trial court's denial of Doyle's motion for a directed verdict. *See id.* ¶ 33.

CONCLUSION

¶29 We conclude that Doyle preserved part of his insufficiency challenge through his motion for a directed verdict but did not preserve his *Robbins* challenge as to Girlfriend's testimony. On the unpreserved *Robbins* claim, we conclude that the trial court did not plainly err in not disregarding Girlfriend's testimony. And on the merits of the preserved claim, we conclude that the State provided sufficient evidence to disprove

Doyle's theory of self-defense beyond a reasonable doubt. We therefore affirm Doyle's conviction for aggravated assault.

―――――