2019 UT App 16

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TERESA MARIE ALIRES,
Appellant.

Amended Opinion[1]
No. 20160966-CA
Filed January 17, 2019

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 161401117

Nathalie S. Skibine and Marlene M. Mohn, Attorneys
for Appellant

Sean D. Reyes and William M Hains, Attorneys
for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE APPLEBY concurred.

MORTENSEN, Judge:

¶1 After accusing her wife (Wife) of infidelity, Defendant Teresa Marie Alires threatened to beat and kill Wife in the presence of their infant child and teenage niece. As their argument escalated, Alires threatened to strangle Wife—and then proceeded to do so. She slapped Wife, pushed her up

---

1. This Amended Opinion replaces the Opinion in Case No. 20160966-CA that was issued on September 7, 2018. After our original opinion issued, the State of Utah and Defendant Teresa Marie Alires filed petitions for rehearing. We grant the petitions as reflected now in Part II.

against the wall, struck her in the head, lifted her by the throat, and threw her onto the couch. Placing both hands on Wife's neck, Alires pushed down until Wife could not breathe and could barely make any sounds. After thirty seconds, Alires let go of Wife, who then left the house and called the police. The State charged Alires with two counts of domestic violence in the presence of a child and one count of aggravated assault. At trial, Alires requested a self-defense instruction, but the court denied it. The jury convicted her on all charges. Alires now appeals on three grounds. First, she contends that the trial court erred in holding that the evidence presented was sufficient to prove, beyond a reasonable doubt, that she used force likely to cause death or serious bodily injury. Second, she argues that she was erroneously denied a self-defense instruction. Third, she claims constitutional error. We affirm.

BACKGROUND[2]

*Domestic Incident*

¶2      Alires and Wife married in 2010 and had a child together in 2014. Wife described their marriage as "fearful," stating that they had committed acts of domestic violence upon each other throughout their marriage, though Wife claimed that she had only ever acted in self-defense against Alires's abuse. One morning, an argument between Alires and Wife erupted into physical violence. The disagreement—which their fifteen-year-old niece (Niece) recorded on a cell phone—escalated after Wife told Alires that she would not get custody of their fourteen-month-old child in the event of a divorce. Alires threw a plate of fruit at Wife, calling her a "fucking slut," a "dumb bitch," and a "true whore." She told Wife that she was "very,

---

2. "On appeal from a criminal conviction, we recite the facts from the record in the light most favorable to the jury's verdict." *State v. Pham*, 2015 UT App 233, ¶ 2, 359 P.3d 1284.

very replaceable" and said, "[T]he only thing that works is fuckin' smackin' you."

¶3    When Wife said she would take their infant child away from Alires, she responded, "Keep fucking talking about how you're gonna keep [him] from me . . . and I will fucking choke you out right fucking now." As the argument continued, Alires threatened, "Shut up . . . or else I'll fucking kill you." When Wife told Alires to get a lawyer, Alires threw a hairbrush at Wife, who was holding their child. Niece took the child from Wife and left the room.

¶4    After Niece departed, Alires told Wife, "Come get your beat-down bitch," and then forced Wife against the wall and began slapping and punching her in the head. Wife tried to stop her, but Alires lifted Wife up by the neck, threw her on the couch, and pinned her there. Alires then placed both of her hands around Wife's neck and began strangling her, pressing with "weight galore." Although Wife did not lose consciousness, she could not breathe, speak, or scream for help. Wife tried to free herself, but was unable. After approximately thirty seconds, Alires let go of Wife's neck. Wife immediately took their child and Niece outside and called the police.

¶5    The police arrived and examined Wife. Although Wife refused formal medical treatment, the officer who responded to the call (Officer) observed several injuries, including a bump and bruise on Wife's head, a scratch on her chest, and red markings around her neck. For a couple of days following the incident, Wife's throat hurt and she could not eat or swallow. Wife was "emotional," "hysterical," and "in distress."

¶6    Officer also interviewed Alires, but Officer did not notice any injuries or marks on Alires's body. In fact, Alires said that she "couldn't be injured because she was stronger than [Wife]." Officer testified that Alires admitted to choking Wife but claimed that she acted in self-defense. Alires alleged that she and Wife had gotten into an argument and Wife had slapped her, so

"she slapped [Wife] back, and then had to restrain her." Alires further asserted that, in an effort to subdue Wife, Alires had "grabbed onto [Wife's] throat, sort of lifted her up, and then pushed her down onto the couch," holding her there by the neck until Wife had "calmed down."

*Summary of Proceedings*

¶7     The State charged Alires with one count of aggravated assault and two counts of commission of domestic violence in the presence of a child. Alires was tried by a jury. At trial, the State presented evidence against Alires, including an audio recording of the fight[3] as well as testimony from Wife, Officer, and a forensic nurse (Nurse).

¶8     Without ever examining, interviewing, or reviewing Wife's injuries, Nurse explained that, in general, strangulation is "any sort of outside force applying pressure to the neck" that prevents oxygenated blood from reaching the brain, either by restricting blood flow or air intake.[4] Nurse further testified that

---

3. Niece did not testify, but neither party disputes the validity of the recording of the argument between Alires and Wife.

4. According to Nurse, blocking oxygenated blood from the brain requires eleven pounds per square inch (PSI) of pressure to the carotid arteries, four PSI of pressure to the jugular veins, or thirty-three PSI of pressure to the trachea. Nurse explained that opening a can of soda takes twenty PSI of pressure, and using just one hand can produce between forty and fifty PSI of pressure. She further testified that if someone were to lift an adult by the neck, the pressure used would "[a]bsolutely" exceed thirty-three PSI of pressure. Utah case law supports the assertion that strangulation—"outside force applying pressure to the neck"—is sufficient evidence of serious bodily injury. *See State v. Walker*, 2017 UT App 2, ¶¶ 25–26, 30–31, 34, 391 P.3d 380 (clarifying that there is "a distinction between determining

(continued…)

symptoms of strangulation included loss of consciousness, bowel release, urination, difficulty swallowing, hoarseness, shortness of breath, voice changes, scratches, claw marks, and bruises. She elaborated that it would take only three minutes of complete obstruction of the carotid arteries to cause death, but some cells in the brain can begin to die within six to ten seconds if deprived of oxygen—and once brain cells die, they do not regenerate. Additionally, she testified that lack of oxygen to the brain may have a "traumatic brain effect" that is "similar to a concussion," especially if the event is recurring.

¶9     At the close of the State's presentation of evidence, Alires moved for a directed verdict, arguing that the evidence was insufficient on all counts. Responding to the charge of aggravated assault, Alires argued that there was no evidence that the alleged force used—thirty seconds of pressure on Wife's neck—was likely to produce death or serious bodily injury. Additionally, Alires argued that even if there was an aggravated assault, it did not occur in the presence of a child, and therefore she could not be convicted on the charges of domestic violence in the presence of a child. The court denied the motion.

---

(…continued)

whether the evidence [of serious bodily injury by way of strangulation] is sufficient to support a . . . conviction and instructing the jury [that strangulation requires a finding of serious bodily injury] as a matter of law . . . ."); *State v. Speer*, 750 P.2d 186, 191 (Utah 1988) (holding that choking the victim until she "almost passed out" was "force likely to cause death or serious bodily injury" (cleaned up)); *State v. Peterson*, 681 P.2d 1210, 1219 (Utah 1984) (noting that placing hands around the neck and applying sufficient pressure to cause a person to black out is force that "could have caused . . . death or serious bodily injury"); *State v. Fisher*, 680 P.2d 35, 37 (Utah 1984) (holding that "strangulation constitutes serious bodily injury" (cleaned up)).

¶10    Alires then testified on her own behalf, stating that Wife's account and Officer's account of what Alires told him after the accident were inaccurate. Alires said that she was angry but did not intend to literally carry out the threats against Wife. Notwithstanding her alleged admission to Officer that she had strangled Wife, Alires later claimed that after Wife instigated the fight, Alires's hand might have hit Wife's neck "when [they] fell over the couch," but she did not choke or squeeze Wife's neck. Alires further testified that Officer asked her repeatedly if she restrained Wife by grabbing her neck, and she responded that she did not. She also testified that she was injured in the fight but withheld that information from Officer to protect Wife.

¶11    Finally, Alires claimed that other than this incident, she had never hit Wife—though she had "restrained" her several times throughout the course of their relationship—and until recently, it had been a "very happy marriage." The State recalled Wife as a rebuttal witness, and she testified that prior to this incident Alires had punched her on sixty separate occasions throughout the course of their relationship. Wife added, "[S]he made me believe that it was my fault that I was getting hit."

¶12    Alires requested a self-defense instruction, but the trial court determined that such an instruction was improper when "someone denies the conduct that is the heart of the charge." And because Alires testified that she did not squeeze Wife's neck, the court determined that the situation did not "call for a justification instruction." But the court did give a lesser-included-offense instruction for simple assault. A jury convicted Alires on all counts as charged, and Alires timely appeals.

ISSUES AND STANDARDS OF REVIEW

¶13    Alires first argues that there was insufficient evidence for the jury to conclude that her strangulation of Wife constituted means or force likely to cause death or serious bodily injury. We

"will reverse a jury conviction for insufficient evidence only when the evidence, viewed in the light most favorable to the jury's verdict, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which [she] was convicted." *State v. Lucero*, 2012 UT App 202, ¶ 2, 283 P.3d 967 (cleaned up). "The court's inquiry ends when there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made." *State v. White*, 2011 UT App 162, ¶ 8, 258 P.3d 594 (cleaned up).

¶14 Alires also argues that the trial court erred when it declined to give the jury a self-defense instruction. A trial court's "refusal to give a jury instruction is reviewed for abuse of discretion." *State v. Berriel*, 2013 UT 19, ¶ 8, 299 P.3d 1133 (cleaned up).[5] However, in order for a party to prevail, they must also show that the error harmed, or prejudiced, the

---

5. At times, this court has been inexact when explaining the standard of review in cases where the trial court has refused to give a self-defense jury instruction, *see*, *e.g.*, *State v. Dozah*, 2016 UT App 13, ¶ 12, 368 P.3d 863 (reviewing the "district court's refusal to give a requested jury instruction for correctness"), but our supreme court has been relatively clear and thus, we follow its lead, *see State v. Berriel*, 2013 UT 19, ¶¶ 9–10, 299 P.3d 1133 ("A district court's refusal to instruct the jury on a defendant's theory of the case presents questions on both sides of the spectrum. The issue of whether the record evidence, viewed in its totality, supports the defendant's theory of the case is primarily a factual question. . . . Trial courts are better factfinders than appellate courts. . . . In contrast, the issue of whether to instruct the jury on a theory that *is* supported by the evidence presents a legal question. . . . In those circumstances, refusal constitutes an error of law, and an error of law always constitutes an abuse of discretion." (cleaned up)).

outcome of the proceeding. *State v. Reece*, 2015 UT 45, ¶ 39, 349 P.3d 712 ("[W]e have applied harmless-error review to erroneous self-defense instructions and the complete failure to instruct the jury on an affirmative defense." (cleaned up)).

¶15 Finally, Alires argues that if the denial of her self-defense instruction does not result in reversal as a matter of law, it should be reversed on the basis of "constitutional" error.[6] Her argument is not preserved and, accordingly, we decline to address it. "As a general rule, claims not raised before the trial court may not be raised on appeal." *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346.

## ANALYSIS

### I. Strangulation Evidence

¶16 Alires contends that the trial court incorrectly held that the evidence presented was sufficient to prove, beyond a reasonable doubt, that Alires used force likely to cause death or serious bodily injury—and therefore she could not properly be convicted of aggravated assault or domestic violence in the presence of a child. The burden of bringing an insufficiency claim is high, *State v. White*, 2011 UT App 162, ¶ 8, 258 P.3d 594, and here, Alires's argument fails because any amount of strangulation is sufficient evidence of force adequate to cause serious bodily harm, *see supra* ¶ 8 n.4. Moreover, in the case at

---

6. Alires also suggests the possibility of structural error, which we reject in full. "[A] defendant claiming constitutional error who did not object at trial may only argue plain error . . . on appeal and thus must prove prejudice, even if the constitutional error claimed on appeal is structural in nature." *State v. Cruz*, 2005 UT 45, ¶ 18, 122 P.3d 543. Here, we conclude that prejudice has not been shown and, accordingly, any error was harmless. *See supra* Part II.

hand, the unrefuted testimony likewise established that the duration and force of strangulation was adequate to cause serious bodily injury.

¶17 We begin by reviewing the elements of the charged crimes.[7] Utah Code section 76-5-103 states that aggravated assault is an actor's conduct that is

> (i) an attempt, with unlawful force or violence, to do bodily injury to another;
>
> (ii) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another; or
>
> (iii) an act, committed with unlawful force or violence, that causes bodily injury to another or creates a substantial risk of bodily injury to another; and

includes the use of a dangerous weapon or "other means or force likely to produce death or serious bodily injury." Utah Code Ann. § 76-5-103 (LexisNexis Supp. 2015).

¶18 Similarly, a person commits the crime of domestic violence in the presence of a child if, among other circumstances, the person uses "means or force likely to produce death or serious bodily injury" in the presence of a child. *Id.* § 76-5-109.1(2)(b). Therefore, all three charges against Alires require a finding of serious bodily injury—a "trigger necessary to convict." *See White*, 2011 UT App 162, ¶ 10.

---

7. The relevant statutory provisions have been amended since the time of the offenses. We therefore refer to the version of the Utah Code in effect in 2015.

¶19    Serious bodily injury is any "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." Utah Code Ann. § 76-1-601(11) (LexisNexis 2015). Alires challenges the sufficiency of the evidence presented to support the jury's finding that Wife's injury—thirty seconds of pressure to her neck—constituted serious bodily injury.

¶20    But to find serious bodily injury "[i]t is not necessary to prove that death or serious bodily injury occurred"; it is only necessary to prove that "the actor used means or force likely to have that result." *State v. Peterson*, 681 P.2d 1210, 1219 (Utah 1984). It is well settled that strangulation, even if performed without the intent to kill, constitutes sufficient evidence of force likely to cause death or serious bodily injury. *See State v. Speer*, 750 P.2d 186, 191 (Utah 1988) (holding that strangling a victim until she almost lost consciousness is uncontroverted testimony that "establishes that [the defendant] used force likely to cause death or serious bodily injury" (cleaned up)); *State v. Fisher*, 680 P.2d 35, 37 (Utah 1984) ("In other words, defendant intentionally committed an act that is dangerous to human life (strangulation), intending to cause serious bodily injury (protracted loss or impairment of both the heart and the brain, i.e., unconsciousness).").

¶21    Here, the fact that Wife did not lose consciousness, experience severe physical symptoms, or die does not preclude the jury from finding that the force was likely to have that result. *See Peterson*, 681 P.2d at 1219. The jury heard that Alires strangled Wife for thirty seconds, in addition to threatening to "choke [her] out" and "fucking kill her." Additionally, Nurse testified that after six to ten seconds, brain cells, which do not regenerate, begin to die if deprived of oxygen. From this evidence, a reasonable juror could find that Alires's actions were evidence of serious bodily injury or force likely to have that result. Therefore, the jury could properly convict her of both aggravated assault and domestic violence in the presence of a

child. We therefore deny Alires's appeal on this point and affirm the denial of her directed verdict motion.

## II. Self-Defense Instruction

¶22 Alires next contends that the trial court erred in declining to give the jury a self-defense instruction regarding her conduct. Assuming without deciding that the trial court erred in refusing to give a self-defense instruction,[8] Alires's claim fails due to the fact that even if error occurred, the error was harmless because the jury was not reasonably likely to acquit after hearing Wife's testimony and listening to a recording of the altercation between Alires and Wife.

¶23 Harmless errors do not require reversal. *State v. Reece*, 2015 UT 45, ¶ 33, 349 P.3d 712. "An error is harmless . . . if it is sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings. . . . Errors are often harmless where there is overwhelming evidence in the record of the defendant's guilt." *Id.* ¶ 33 (cleaned up). Even if one were to conclude that the evidence was sufficient to justify giving the self-defense instruction, we do not reverse where the error is harmless. *See id.* ¶ 39 ("[W]e have applied harmless-error review to erroneous self-defense instructions and the complete failure to instruct the

---

8. While the threshold showing necessary to entitle a party to an instruction is a relatively "low[] bar," *State v. Garcia*, 2017 UT 53, ¶ 44, 424 P.3d 171 (stating that a party is entitled to a self-defense instruction if there is "any reasonable basis in the evidence" to justify it (cleaned up)), we note—without deciding the issue—that the evidence presented to the jury weighs against Alires. "[A] court need not instruct the jury on the requested affirmative defense where the evidence is so slight as to be incapable of raising a reasonable doubt in the jury's mind as to whether the defendant acted in accordance with that affirmative defense." *State v. Burke*, 2011 UT App 168, ¶ 81, 256 P.3d 1102 (cleaned up).

jury on an affirmative defense." (cleaned up)). Alires has failed to persuade us that the alleged trial court error harmed her for two reasons.

¶24    First, based on the defense Alires presented at trial—in particular, her own testimony—there is "no reasonable likelihood that the error affected the outcome of the proceedings. *Id.* ¶ 33 (cleaned up). It must be acknowledged that Alires's main defense at trial was that she did not choke Wife. Alires insisted that she did not choke or squeeze Wife's neck, that she did not restrain Wife by grabbing her by the neck, and that her hand might have hit Wife's neck "when [they] fell over the couch." However, to claim self-defense, Alires would have asked the jury to conclude that she did, in fact, choke or squeeze Wife's neck, or restrain Wife by grabbing her by the neck—albeit in self-defense. But this assertion would have contradicted her actual trial testimony and her primary defense entirely. Accordingly, had the jury been permitted to consider Alires's proposed self-defense theory, the jury would have also had to acknowledge the discrepancy between her testimony at trial and other evidence, and conclude that Alires was not credible.

¶25    Second—and more importantly—any alleged error was harmless because "there [wa]s overwhelming evidence in the record of the defendant's guilt." *Id.* ¶ 33 (cleaned up). When viewed against the evidence presented by the State, Alires's evidence and arguments in support of her self-defense theory were "so slight as to be incapable of raising a reasonable doubt in the jury's mind." *See State v. Burke*, 2011 UT App 168, ¶ 81, 256 P.3d 1102 (cleaned up); *see also State v. Piansiaksone*, 954 P.2d 861, 872 (Utah 1998). The evidence Alires presented in support of her self-defense theory was comprised wholly of: (1) Alires's testimony that Wife was the aggressor and (2) Officer's testimony that Alires said that Wife had slapped her, so she had to "slap[] [Wife] back, and then had to restrain her." This evidence is not likely to have raised a reasonable doubt in the jury's mind after considering the State's evidence, which included: (1) presentation to the jury of the recording in which

Alires threatened Wife's life and shouted profanities at her; (2) Alires's admission that she slapped Wife while simultaneously claiming, "I would never hurt her. I would never dream about hurting her. I've never hurt her before, nor after, nor would I ever"; (3) Alires's assertion that she did not like fighting "[but Wife] likes to scream really loud when we're fighting," while acknowledging that she was the one screaming on the recorded incident; (4) inconsistencies involving Alires's claim that her marriage was "very happy"; (5) Officer's testimony that Wife had several physical injuries, whereas Alires had none; and (6) Alires's prior conviction for giving a false report to a law enforcement officer, which further eroded Alires's credibility in the eyes of the jury. Again, as a result, any alleged error the trial court made is harmless.

¶26    Accordingly—even assuming without deciding that the trial court erred in failing to give the self-defense instruction—the trial court's error was harmless because, based on the overwhelming evidence presented against Alires at trial, there is no reasonable likelihood that the jury would have acquitted Alires. As a result, our confidence in the verdict is not undermined and thus, reversal is not warranted.

### III. Constitutional Error

¶27    Lastly, Alires contends that if the denial of her self-defense instruction does not result in reversal as a matter of law, it should be reversed on the basis of "constitutional" error. "As a general rule, claims not raised before the trial court may not be raised on appeal." *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. To preserve any claim of error, "the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968.

¶28    Alires points to two places in the record in an attempt to demonstrate preservation, but both are insufficient to raise a general argument regarding her constitutional right to a self-

defense jury instruction such that the trial court would have had the opportunity to rule on the issue. First, Alires contends that denial of her self-defense instruction was a constitutional error preserved by the following statement made at trial by her attorney: "Your Honor, based on the testimony, a self defense instruction might be warranted. I have some self defense instructions in here." Second, Alires points to her submission of proposed jury instructions to the court. Using these two passing instances, Alires attempts to elevate the issue to federal constitutional status.

¶29     But she has failed to show how these two instances would "have alerted the trial court that denying [her request for jury instructions] would deprive [her] of [her] due process right." *State v. Sanchez*, 2018 UT 31, ¶ 32, 422 P.3d 866 (cleaned up). Neither of these instances even mentions a constitutional argument, let alone raises the issue sufficient to a "level of consciousness" before the trial court. *Id.* (cleaned up). As such, the issue is not preserved.

CONCLUSION

¶30     We hold that the jury was presented with sufficient evidence to find that Alires's actions constituted serious bodily injury. Additionally, assuming without deciding that the trial court erred in denying Alires's proposed self-defense instruction, any error was harmless. Lastly, because it was not preserved, we decline to address Alires's argument regarding constitutional error.

¶31     Affirmed.

_____