2018 UT App 12

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSE CARVAJAL,
Appellant.

Opinion
No. 20150990-CA
Filed January 19, 2018

Third District Court, West Jordan Department
The Honorable William K. Kendall
No. 141401240

Debra M. Nelson, Attorney for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
GREGORY K. ORME and RYAN M. HARRIS concurred.

TOOMEY, Judge:

¶1      Jose Carvajal, then in his late 40s, engaged in a romantic
relationship with Victim, a 14-year-old minor with intellectual
disabilities. Their relationship involved text communications
and ultimately became physical. When this was discovered,
Carvajal was charged with forcible sexual abuse, and the case
against him was tried by a jury. He appeals his conviction,
arguing that he received ineffective assistance of counsel,
that the court erred in several respects, and that cumulatively,
these errors undermine confidence in the verdict against him.
We affirm.

BACKGROUND

¶2     Victim and her family moved to the United States when she was nearly 14 years old and initially lived with Victim's maternal aunt (Aunt) and Aunt's husband (Uncle). Carvajal is Uncle's brother and lived in the same household. Victim continued to visit there, even after she and her family moved elsewhere.

¶3     Victim's functional intellectual level is equivalent to that of a 7-year-old child, and her intellectual disability affects her memory. She attends a special education program.

¶4     Despite Victim's youth and her significant intellectual challenges, Carvajal apparently became infatuated with her: he addressed her in romantic terms, told her he loved her, and told her "that he wanted to marry" her. He blew kisses to Victim, kissed her on the lips and mouth, caressed her, and hugged her with what he described as "love and passion." One day as they sat next to one another on the couch, Carvajal touched Victim's breast, either under her bra or over her bra, for what she variously characterized as fifteen minutes or not long. He held his hand there, she took it off, and he put it back.

¶5     Soon after this incident, Victim's mother discovered text messages between Victim and Carvajal. In those messages, Carvajal wrote: "You know I will tell you a secret[:] it is the second time that I hug a woman but the first with so much love and passion." When Victim asked who was the first, he responded "You Love." When Victim asked if he wanted her to be older or as she is "right now," Carvajal responded, "Well I love you very much as you are right now and if you were 23 or more I would beg you that we would marry[.] I would beg you to accept me . . . ." When Victim suggested she had other boyfriends, he responded,

> Love if you want to be a girlfriend to one of your friends it is because you really don't love me[.] [P]lease if you are doubting and thinking of telling one of them that you will accept him then let me know so that I don't continue falling in love and let me know so I don't fall more in love and avoid suffering any more.

They exchanged professions of love, in the form of words and images, and Carvajal wrote, "I hope to be able one day for the opportunity when we don't have to hide." Eleven days after this exchange, Carvajal wrote to Victim, instructing her to "[e]rase everything."

¶6    At trial, Carvajal characterized his text messages to Victim as "lead[ing] her on" and testified that their relationship would "only be on the phone, but not in person." But during a conversation with Aunt before trial, Carvajal admitted that he kissed Victim, dreamt about her, and wanted to marry her.

¶7    Victim's parents reported their concerns to the police, and a forensic interviewer spoke with Victim at the Children's Justice Center (the CJC), where Victim disclosed that Carvajal kissed her on the mouth and, on another occasion, touched her under her bra with his hand. The State charged Carvajal with one count of forcible sexual abuse, a second-degree felony.

¶8    During trial, the jury watched a video of the CJC interview with Victim and heard her testify. Victim's testimony was at times contradictory, and she was intermittently confused and forgetful, but when asked whether the things she talked about during the CJC interview had happened, she responded "yes." Although in the CJC interview she said Carvajal touched her breast under her bra with his hand for about fifteen minutes, she phrased it a little differently at trial: Carvajal's hand went "inside [her] shirt" and "[o]ver in [her] bra." When asked how long it lasted, she responded that "[i]t didn't last long."

¶9     After the State rested its case, defense counsel moved for a directed verdict on the basis that Victim testified that Carvajal touched her "over her bra."[1] Counsel also speculated, based on an investigating officer's recommendation that Carvajal be charged with sexual battery, that perhaps Victim told a police officer that Carvajal touched her over her clothing, and argued that, if true, "that's material exculpatory evidence." Accordingly, defense counsel moved for a continuance to "further investigate" the matter. The district court denied both motions and trial proceeded.

¶10     Carvajal testified and denied touching Victim. He claimed Victim's parents manipulated her into fabricating the abuse because they were involved in a bitter inter-family lawsuit and also were seeking a type of visa that would allow them to stay in the United States based on Victim being the victim of a sex offense. He admitted telling Aunt that he had kissed Victim but testified he was lying when he did that because he "was trying to see if [Aunt] was on [his] side or not . . . ."

¶11     Defense counsel had "[n]o objections" to jury instructions that explained that forcible sexual abuse could be committed by, among other things, "touch[ing] the breasts of a female, or otherwise tak[ing] indecent liberties." Another instruction explained that "'[t]ouching' must be skin-to-skin; contact made over the clothing does not constitute 'touching' for purposes of this instruction." Another defined "indecent liberties" as "conduct that is as serious as touching . . . the breast of a female" and added that "[t]ouching that occurs over clothing may constitute the taking of indecent liberties when, considering all the surrounding circumstances, the conduct is comparable to the touching that is specifically prohibited."

---

1. This did not accurately characterize Victim's testimony.

¶12　During closing argument, the State initially emphasized that Carvajal touched Victim's breast skin-to-skin. Defense counsel responded that Victim testified that the touching was over her bra—omitting her actual words, which were "[o]ver in my bra." In its rebuttal argument, the State reiterated its skin-to-skin theory of the case but alternatively argued that touching Victim's breast through her clothing constituted indecent liberties in light of all the circumstances.

¶13　The jury convicted Carvajal, and the district court sentenced him to a term of one-to-fifteen years in prison. Carvajal appeals.

ISSUES AND STANDARDS OF REVIEW

¶14　Carvajal argues that his attorney's failure to object to the inclusion of the instruction concerning indecent liberties, and his failure to object to the prosecutor's characterization, during closing argument, of the type of touching required for conviction, constituted ineffective assistance of counsel. Carvajal also argues his attorney performed ineffectively by failing to adequately investigate his case. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether [the] defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (alteration in original) (citation and internal quotation marks omitted).

¶15　Carvajal also argues that the district court erred "by instructing the jury on an inapplicable element of the offense and in failing to correct the prosecutor's erroneous statement of the law applicable to the facts of this case." Carvajal did not raise these objections at trial, but requests that we review them for plain error. *State v. Halls*, 2006 UT App 142, ¶ 10, 134 P.3d 1160.

¶16    And finally, Carvajal argues that "cumulative errors undermined confidence in the verdict." "Under the cumulative error doctrine, we will reverse only if the cumulative effect of the several errors undermines our confidence . . . that a fair trial was had." *State v. Kohl*, 2000 UT 35, ¶ 25, 999 P.2d 7 (alteration in original) (citation and internal quotation marks omitted).

ANALYSIS

I. Carvajal's Counsel Did Not Render Objectively
Ineffective Assistance

¶17    Carvajal argues that his attorney rendered ineffective assistance in several respects. First, he argues that his counsel "was ineffective for failing to object to the inclusion of the 'indecent liberties' instruction where the only conduct claimed was a single 'touching' of a breast—a statutorily proscribed body part." Second, he argues that counsel "fail[ed] to object to the State's incorrect and prejudicial argument that the jury could convict Carvajal of forcible sexual abuse whether or not the jurors believed he touched [Victim's] bare breast." And third, he argues that counsel was "ineffective for failing to investigate and question the investigator about statements made by [Victim] which indicated the claimed touching happened over the clothing."

¶18    To prevail on his claim of ineffective assistance of counsel, Carvajal "must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first element of the test, he "must overcome the strong presumption that [his] trial counsel rendered adequate assistance." *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162 (alteration in original) (citation and internal quotation marks omitted). We address each of Carvajal's arguments in turn.

A.    Counsel's Failure to Object to the Indecent Liberties Instruction

¶19    The jury was given an instruction about forcible sexual abuse:

> Under the law of the State of Utah, a person commits Forcible Sexual Abuse if the victim is 14 years of age or older and the actor touches the anus, buttocks, or any part of the genitals of another, or touches the breasts of a female, or otherwise takes indecent liberties with the actor or another, with the intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless of the sex of any participant.[2]

Another instruction defined the term "indecent liberties" as "conduct that is as serious as touching the anus, buttocks, or genitals of a person or the breast of a female." It further provided, "Touching that occurs over clothing may constitute the taking of indecent liberties when, considering all the surrounding circumstances, the conduct is comparable to the touching that is specifically prohibited."[3] The same instruction

---

2. We note that this instruction is based upon the Model Utah Jury Instructions and that it is consistent with Utah case law. *See* Model Utah Jury Instructions 2d CR1611 (2016), https://www.utcourts.gov/resources/muji/ [https://perma.cc/3HY G-GE4C]. It is a correct statement of the law. *See* Utah Code Ann. § 76-5-404 (LexisNexis 2012).

3. Although Carvajal does not contend that the indecent liberties instruction itself was incorrect, we note that the language of this

(continued…)

identified factors that could be considered in determining whether the conduct amounted to indecent liberties. Defense counsel did not object to these instructions.

¶20   Carvajal argues that, "[w]here the only claim was that Carvajal touched [Victim's] bare breast, inclusion of the 'indecent liberties' instruction was error." He argues that, "[u]nder the facts of this case, the 'indecent liberties' instruction was an incorrect statement of the law, creating confusion and misleading the jury on the conduct legally required to convict, prejudicing Carvajal." He states that "the only question for the jury was whether Carvajal touched [Victim's] bare breast," and "the indecent liberties factors were irrelevant because the State did not introduce evidence of conduct that was of the 'same magnitude of gravity' as the touching of a bare breast."

¶21   Carvajal was charged with forcible sexual abuse for touching Victim's breast, and the State could prove this under alternate theories: either that Carvajal touched her bare breast, or by taking indecent liberties, which could include touching her breast through her clothes if, "considering all the surrounding circumstances, the conduct is comparable to the touching that is specifically prohibited." During Victim's CJC interview, she said Carvajal touched her under her bra, with his hand. At trial, she testified his hand went "over in my bra." Defense counsel interpreted Victim's trial testimony to mean touching her breast

---

(…continued)

jury instruction appears to be an adaptation of the language provided in *State v. Jacobs*, 2006 UT App. 356, ¶ 9, 144 P.3d 226 ("Thus, even when the specified body parts are touched through clothing, the perpetrator may still be punished under the indecent liberties prong of the statute when, considering all the surrounding circumstances, the conduct is comparable to the touching that is specifically prohibited.").

through her clothes and indeed misquoted it during closing argument.

¶22    Either way, the jury could find that Carvajal committed the crime of forcible sexual abuse, whether it was by touching her bare breast or by touching her breast through clothing if the surrounding circumstances made that comparable to touching her bare breast. The circumstances the jury could consider were

> factors such as: (1) the duration of the conduct, (2) the intrusiveness of the conduct against [Victim's] person, (3) whether [Victim] requested that the conduct stop, (4) whether the conduct stopped upon request, (5) the relationship between [Victim] and [Carvajal], (6) [Victim's] age, (7) whether [Victim] was forced or coerced to participate, and any other factors [it considered] relevant.

Through the video recording of the CJC interview, the State presented evidence that Carvajal touched Victim's breast under her bra. Victim's trial testimony that he touched her "over in [her] bra" could be construed as consistent with the CJC interview. But even if it was a statement that the touching occurred through Victim's clothing, as defense counsel apparently heard it, the evidence was still sufficient to form the basis for a conviction of forcible sexual abuse under the indecent liberties prong: Victim was 14 years old and Carvajal in his late 40s; Victim's functional intellectual level is that of a 7-year-old child; Carvajal induced her to participate by sending her flirtatious text messages; and Carvajal put his hand on Victim's breast despite her efforts to stop him. *See State v. Peters*, 796 P.2d 708, 711–12 (Utah Ct. App. 1990) (holding that a man had taken indecent liberties when he enticed a teenage girl to enter an abandoned house, detained her against her will for about twenty minutes, and placed his hand on her clothed breast). Given that

there was ample evidence to support either theory, objectively effective counsel could reasonably have approved the instruction. Accordingly, counsel did not perform deficiently. *See Clark*, 2004 UT 25, ¶ 6 (providing that courts "give[] trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them" (citation and internal quotation marks omitted)). We therefore need not address the question of prejudice.

B.    Defense Counsel's Failure to Object to the State's Closing Argument

¶23    Carvajal argues his counsel "performed deficiently by failing to object to the State's incorrect and prejudicial argument that the jury could convict [him] of forcible sexual abuse whether or not the jurors believed he touched [Victim's] bare breast." He alleges it was "prosecutorial misconduct" to "equate[] the elements of 'touching' and 'indecent liberties,' and incorrectly advise[] the jury that the 'touching' alleged in this case could support, under either prong, a conviction for forcible sexual abuse."

¶24    As our supreme court has explained, a prosecutor's actions and remarks constitute misconduct only if they (1) "call to the attention of the jurors matters they would not be justified in considering in determining their verdict," and (2) "under the circumstances of the particular case," are "substantial and prejudicial." *State v. Tillman*, 750 P.2d 546, 555 (Utah 1987). But relevant here, both prosecutors and defense counsel enjoy "considerable latitude" during closing argument and "may discuss fully from their viewpoints the evidence and inferences and deductions arising therefrom." *Id.* at 560.

¶25    During closing argument, the prosecutor emphasized that Carvajal engaged in skin-to-skin touching, consistent with Victim's statement during the CJC interview and one interpretation of her "over in my bra" testimony. Defense

counsel responded by addressing the elements of forcible sexual abuse and argued that touching Victim through her clothing was "not just as bad, it is slightly less." On rebuttal, the prosecutor argued there was "clear touching" but then argued in the alternative that, "[i]f it comes down to it, and you guys want to get that far, I'd argue that the indecent liberties instruction applies." She added, "[T]he touching of the breast, it's indecent liberties. The State would submit whether or not it was under the shirt over the bra or under bra, ultimately, it was an indecent liberty or touching, either way, it was a violation of the law and the elements met."[4]

¶26    As we have noted, the crime with which Carvajal was charged could be proved under either theory. It was therefore proper for the prosecutor to argue either theory, provided the instruction was correct, which it was, and provided there was evidence to support it, which there was. Given that it was proper for the prosecutor to argue the alternate theory, defense counsel did not perform deficiently by not objecting to it. *See State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. Because we have determined that the prosecutor committed no misconduct, we need not address whether Carvajal has established prejudice.

C.    Defense Counsel's Failure to Investigate

¶27    Carvajal argues that his counsel "fail[ed] to investigate and question the investigator about his report which indicated [Victim] had not alleged that Carvajal touched her bare breast." The initial defense strategy had been to deny inappropriate touching and to suggest that Victim had been manipulated into fabricating the allegation against Carvajal. Mid-trial, after Victim testified that Carvajal touched her "over in [her] bra," counsel

---

4. We note that the prosecutor also mentioned the indecent liberties theory in response to an objection during trial.

moved to continue the trial "so that [he could] further investigate" what Victim told the investigator. Counsel had not interviewed the investigator because "he had not anticipated a defense based on a lack of credible evidence showing [Victim's] bare breast was touched." He noted that the report recommended charging Carvajal with sexual battery, and if Victim told the investigator that Carvajal touched her over her clothes, that would be "material exculpatory evidence." The court denied the motion to continue, noting that the report had been available to counsel since initial discovery and that he had "had the opportunity to investigate further if he felt it was necessar[y]."

¶28 On appeal, Carvajal speculates that Victim told the investigator that Carvajal touched her through her clothing and that, if counsel had interviewed the investigator, he "would have learned before trial there was a basis to undermine [Victim's] allegations which would have changed how he prepared and presented Carvajal's defense." He contends that this failure prejudiced him because it rendered the result of the proceedings unreliable.

¶29 The record does not support Carvajal's statement that the report "indicated [Victim] had not alleged that Carvajal touched her bare breast." Counsel merely inferred this from the investigator's recommendation that Carvajal be charged with sexual battery, which does not require skin-to-skin touching. He offers no affirmative evidence in support of this speculation and did not seek to supplement the record. *See* Utah R. App. P. 23B (providing that a party to a criminal appeal may move this court to remand the case to the district court to supplement the record with the facts necessary to determine claims of ineffective assistance of counsel). Under these circumstances we decline to address the claim. *See State v. Burnside*, 2016 UT App 224, ¶¶ 30–33, 387 P.3d 570 (rejecting ineffective assistance of counsel

claim as speculative where appellant provided no evidence to support it).

## II. The District Court Did Not Plainly Err

¶30 Carvajal argues the district court "erred by erroneously instructing the jury on 'indecent liberties' and in failing to correct the prosecutor's incorrect statements informing the jurors Carvajal could be convicted of forcible sexual abuse regardless if they determined he touched [Victim's] bare breast." He contends that "an error exists because the trial court failed to exclude the inapplicable elements instruction on 'indecent liberties' or to correct the erroneous statements of the prosecutor on the applicable law." He argues that it was plain error and prejudicial to him. But because we have determined there was no error in the instruction, or in the prosecutor's conduct, we likewise determine that the court committed no error.

## III. The Cumulative Error Doctrine Does Not Apply in This Case

¶31 Carvajal's final argument is that the cumulative errors in this case warrant reversal because "[t]he prosecutor's misconduct, defense counsel's deficient performance and the court's errors went to critical issues and should undermine this Court's confidence in the verdict." But having discerned no error, there can be no cumulative error. *See State v. Killpack*, 2008 UT 49, ¶ 56, 191 P.3d 17, *abrogated on other grounds as recognized by State v. Lowther*, 2017 UT 34, 398 P.3d 1032.

## CONCLUSION

¶32 Carvajal's attorney did not provide ineffective assistance of counsel, and the district court did not plainly err in connection with the jury instruction given in regard to the State's alternate theory of the case. We further determine there is no basis in the record for Carvajal's contention that he received ineffective

assistance of counsel in connection with defense counsel's decision not to inquire into the investigating officer's recommendation that he be charged with a different crime. Finally, seeing no error, we conclude that there was no cumulative error to warrant a reversal. We affirm.

————————