2019 UT App 194

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
AFIMUAO S. LEOTA,
Appellant.

Opinion
No. 20171012-CA
Filed November 29, 2019

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 151402812

Teresa L. Welch and Christine Seaman, Attorneys
for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES RYAN M. HARRIS and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1 Following a jury trial, Afimuao S. Leota was convicted of one count of forcible sexual abuse for touching his fifteen-year-old stepdaughter (Victim) on her breasts over her clothing. Leota challenges the sufficiency of the evidence supporting his conviction, arguing that the State failed to prove that his over-the-clothing touch of Victim constituted indecent liberties and that Victim's testimony was too inherently improbable to be credited. We reject his sufficiency challenge and affirm.

## BACKGROUND[1]

¶2     Victim was eleven years old when Leota married Victim's mother and moved into their home. Victim perceived her relationship with Leota to be "father/daughter," and she called him "daddy."

¶3     In 2016, the State charged Leota with seventeen offenses, ranging from rape and object rape to forcible sodomy and forcible sexual abuse, based on Victim's allegations. As relevant here,[2] Leota was charged with one count of forcible sexual abuse based on allegations that he put his hands on Victim's clothed breasts for a period of time, only removing them when Victim indicated that the touch was not welcome.

¶4     A two-day trial for all the charges was held in 2017. Victim testified about the alleged incident of abuse. She testified that on one occasion when she was fifteen years old, she and Leota were in her mother and Leota's room, on their bed, watching football. Victim was lying against Leota, who was rubbing her back. She recounted that after Leota rubbed her back, he put his hands on her breasts, over her clothing, and asked, "Is it okay if Daddy does this?" Victim testified that she "shrugged and just said, 'huh-uh,' like, I don't know." Leota then apologized, telling her, "Sorry, Daddy shouldn't have done that" and removed his hands from her breasts.

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Reigelsperger*, 2017 UT App 101, ¶ 2 n.1, 400 P.3d 1127 (cleaned up).

2. The jury acquitted Leota of sixteen of the charged offenses, and we do not address them further.

¶5     A detective (Detective), who had spoken with Leota about the incident approximately two-to-three months after it occurred, also testified. Detective stated that, initially, Leota denied any touching had occurred, indicating that he "didn't know of anything that had happened" with Victim. Leota also explained that he and Victim had an affectionate relationship, often hugging or cuddling on the couch, and that it was common for Leota to "snuggle" with his other children as well. And Detective recounted that Leota theorized that Victim was angry with him and was "making up" the allegations because he had recently disciplined her by taking away her electronics.

¶6     Detective testified that as the interview progressed, however, Leota recanted his initial denial of the touching incident, eventually admitting that he had touched Victim's breasts over her clothing. Leota told Detective that he and Victim had been "up on his bed in his bedroom" cuddling, with Victim's back "pressed up against [Leota's] chest," and that at some point Leota's "hands were accidentally on [Victim's] boobs." Detective recounted that, when asked, Leota "couldn't explain what was accidental" about the touching.

¶7     Leota then stated that, with his hands still on her breasts, he asked Victim, "Are you okay with this?" When Detective asked why Leota asked Victim that question, Leota responded, "[B]ecause I was . . . touching her boobs." Leota told Detective that he removed his hands when Victim "eventually said that she wasn't okay with the touch" and that he then apologized to Victim, telling her that "it wasn't going to happen again." Detective testified that, toward the end of the interview, Leota also told him that "he felt bad," expressing "some sort of remorse for what had happened" as well as concern about the ramifications on his marriage. Leota also indicated to Detective that "what he had done was wrong."

¶8      At trial, the State proceeded on the theory that Leota's over-the-clothing touching constituted the taking of indecent liberties under Utah Code section 76-5-404, the forcible sexual abuse statute. It asserted there was convincing evidence that Leota had a "sexual interest in his own stepdaughter and that he was willing to act on that interest by keeping his hands on her breasts." In this respect, the State emphasized the nature of Leota's relationship to Victim, urging that "it is indecent for a stepfather to do this to his stepdaughter" and that Leota and Victim's "relationship dynamic should not be lost as [the jury] consider[ed] whether or not what [it was] looking at here is an indecent [liberty]." The State also reminded the jury that, given Victim's age and Leota's relationship to Victim, Victim could not have consented to Leota's conduct as a matter of law.

¶9      At the close of the State's case, Leota moved for a directed verdict on all counts, arguing that Victim's statements and testimony were "entirely uncredible" to the point that no reasonable jury could convict him on any of the counts based on her testimony. The court denied the motion, determining that the jury could choose to accept Victim's testimony and that any issues with respect to Victim's credibility represented "classic" jury questions. At the close of all the evidence, Leota renewed the motion, which the court again denied.

¶10     The jury convicted Leota of one count of forcible sexual abuse based on his over-the-clothing touching of Victim's breasts. Before sentencing, Leota filed a motion to arrest judgment. He argued that there was insufficient evidence to support the conviction because the State presented evidence indicating only that Leota "touched [Victim's] breast over the clothing, stopping when asked" and that such touching was not of the "same magnitude of gravity" as the type of skin-to-skin touching of a victim's bare anus, buttocks, genitalia, or a female breast required under the touching variant of the statute. (Cleaned up.) The court denied the motion. Leota appeals.

ISSUE AND STANDARD OF REVIEW

¶11    Leota challenges the sufficiency of the evidence supporting his conviction. "On a sufficiency of the evidence claim we give substantial deference to the jury," reviewing "the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict." *State v. Ashcraft*, 2015 UT 5, ¶ 18, 349 P.3d 664 (cleaned up). "We will reverse a guilty verdict only when the evidence . . . is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *State v. MacNeill*, 2017 UT App 48, ¶ 51, 397 P.3d 626 (cleaned up).

ANALYSIS

¶12    Leota challenges the sufficiency of the evidence supporting his forcible sexual abuse conviction on two grounds. First, he argues that the evidence did not support his conviction because the State failed to prove that his conduct constituted indecent liberties under Utah Code section 76-5-404(1), the forcible sexual abuse statute. Second, he argues that Victim's testimony was too inherently improbable to support the verdict. We address each argument below.

I. Indecent Liberties

¶13    Leota argues that the verdict cannot be sustained because the State failed to present sufficient evidence to establish that his conduct constituted indecent liberties under Utah Code section 76-5-404(1). He cites evidence suggesting that his touch was merely accidental but argues that even if the jury found otherwise, the touch was "not of the same magnitude of gravity as a skin-to-skin touch," as required under the statute. We disagree.

¶14 In a jury trial, the jury acts as the factfinder, and in this role it is the jury's duty and prerogative to serve as "the exclusive judge of both the credibility of witnesses and the weight to be given to particular evidence." *State v. Black*, 2015 UT App 30, ¶ 19, 344 P.3d 644 (cleaned up); *see also State v. Ashcraft*, 2015 UT 5, ¶ 29, 349 P.3d 664 (stating that a jury is entitled to accept or reject "the existence of reasonable doubt posited by the defense[]"); *State v. Howell*, 649 P.2d 91, 97 (Utah 1982) (explaining that a jury is not "obligated to believe the evidence most favorable to [the] defendant"). In this respect, a jury is also entitled to draw reasonable inferences from the evidence presented in reaching its findings. *State v. Doyle*, 2018 UT App 239, ¶ 24, 437 P.3d 1266. "A jury's inference is reasonable unless it falls to a level of inconsistency or incredibility that no reasonable jury could accept." *Ashcraft*, 2015 UT 5, ¶ 18 (cleaned up). Thus, our role on appeal is to determine "simply whether the jury's verdict is reasonable in light of all of the evidence taken cumulatively, under a standard of review that yields deference to all reasonable inferences supporting the jury's verdict." *Id.* ¶ 24. "As long as there is some evidence from which all the necessary elements of the charged offenses can be proved, there is sufficient evidence to find the defendant guilty beyond a reasonable doubt." *State v. Johnson*, 2015 UT App 312, ¶ 11, 365 P.3d 730.

¶15 Here, we conclude that the evidence was such that the jury was well within its prerogative to determine that Leota's conduct constituted forcible sexual abuse. Under the forcible sexual abuse statute it is unlawful for a person to touch one of the enumerated body parts or otherwise take "indecent liberties" with another person at least fourteen years of age:

> A person commits forcible sexual abuse if the victim is 14 years of age or older and, under circumstances not amounting to rape, object rape, sodomy, or attempted rape or sodomy, the actor touches the anus, buttocks, or any part of the

genitals of another, or touches the breast of a female, or otherwise takes indecent liberties with another . . . with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person, without the consent of the other . . . .

Utah Code Ann. § 76-5-404(1) (LexisNexis 2012).[3]

¶16    The statute prohibits two variants of conduct: touching of the enumerated body parts, and taking indecent liberties with another. *Id.*; *see also State v. Jacobs*, 2006 UT App 356, ¶¶ 9–10, 144 P.3d 226. While the touching variant *requires* skin-to-skin contact, the indecent liberties variant does not. *Jacobs*, 2006 UT App 356, ¶¶ 6–10. Rather, over-the-clothing touching may constitute indecent liberties so long as the touching is of the "same magnitude of gravity as that specifically described in the statute." *State v. Carrell*, 2018 UT App 21, ¶ 24, 414 P.3d 1030 (cleaned up); *see also State v. Balfour*, 2008 UT App 410, ¶¶ 14–15, 198 P.3d 471; *Jacobs*, 2006 UT App 356, ¶ 9 ("Thus, even when the specified body parts are touched through clothing, the perpetrator may still be punished under the indecent liberties prong of the statute when, considering all the surrounding circumstances, the conduct is comparable to the touching that is specifically prohibited.").

¶17    The jury in this case was instructed on both variants. As to the differences between both variants and the requirements for the indecent liberties variant specifically, the court instructed,

> [T]here are two prongs to this statute. The "touching" prong requires that the State prove that the touching was not through clothing but skin to

---

3. Although Utah Code section 76-5-404 has since been amended, we cite the version in effect at the time of Leota's conduct.

skin. The "indecent liberties" prong does not require a touching that is skin to skin.

. . . .

The Utah statute prohibiting "Forcible Sexual Abuse" specifies and prohibits certain enumerated touching of the unclothed anus, genitals, or female breast of another and then adds the phrase "or otherwise takes indecent liberties" as a catch all phrase extending the scope of the statute to forbid other sexual misconduct of equal seriousness and gravity as the "touching" prong. The "indecent liberties" prong cannot be met by the State merely by showing words were spoken. There must be conduct as well, akin [to] and alike the "touching" prong though any such touching need not be skin to skin under that prong.

¶18 The court also instructed that, in evaluating whether the conduct constituted indecent liberties, the jury "may consider the following factors": (1) "the nature of the other's participation and whether defendant required such participation," (2) "the duration of the act," (3) "the presence or absence of clothing," (4) "defendant's willingness to terminate his conduct at the other's request," (5) "the relationship between the defendant and the other," (6) "the age of the other," and (7) "how intrusive the act was against the other's person."[4] *See generally State v. Carvajal*, 2018 UT App 12, ¶ 22, 414 P.3d 984 (setting forth the factors a jury may consider in evaluating indecent liberties); *State v. Lewis*, 2014 UT App 241, ¶ 12, 337 P.3d 1053.

¶19 Considering these factors in the context of this case, we are satisfied that the jury was presented with sufficient evidence

---

4. Leota does not challenge the jury instructions on appeal.

from which to convict Leota of taking indecent liberties with Victim. First and foremost, the jury heard ample testimony about Leota's relationship to Victim—that he was her stepfather. Indeed, she referred to him as "daddy," and there was evidence that the two otherwise had a close, affectionate relationship. It was also undisputed that, at the time of the touching, Victim was fifteen years old, and the jury was instructed that, given her age and the familial relationship, Victim could not consent to the touching as a matter of law.

¶20 Second, the jury heard evidence about the circumstances surrounding the touching and, more specifically, the vulnerability of Victim's position (and, by extension, the touching's intrusiveness). For example, both Victim and Leota stated that the touching occurred while they cuddled on his bed watching television in his bedroom.

¶21 Third, as the State points out, the jury also heard evidence supporting reasonable inferences that, regardless of whether Leota at times characterized the touching as accidental, it was not. While Leota told Detective that the touching was accidental, he also told Detective that when he was holding Victim, his hands "went over . . . to where her boobs were" and that, with his hands on her breasts, he asked her if the touching was okay. Detective also testified that Leota informed him that he did not remove his hands until Victim "eventually" expressed discomfort. Such evidence permitted reasonable inferences that, rather than being a merely accidental touch, Leota intentionally initiated the touching and then took advantage of his stepdaughter as long as he thought he could.

¶22 These facts, taken together, support the jury's determination that Leota's conduct was comparable to the touching of another's bare breast or buttocks. That Leota disagrees with the jury's evaluation of the evidence, and in particular with its weighing of the relevant factors, is not a sufficient basis on which to reverse. It was the jury's prerogative

to consider all the evidence presented, weigh the relevant factors on which it had been instructed, and make findings according to its assessment of the evidence. *See Black*, 2015 UT App 30, ¶ 19; *see also Ashcraft*, 2015 UT 5, ¶ 24. Thus, we conclude that the evidence in this case was sufficient to support the jury's determination that Leota's conduct constituted the taking of indecent liberties under our forcible sexual abuse statute.[5]

## II. Inherent Improbability

¶23    Leota also argues that the evidence was insufficient to support the verdict because Victim's testimony was inherently improbable. We disagree.

---

5. Leota relies heavily on two cases from the 1980s—*In re L.G.W.*, 641 P.2d 127 (Utah 1982), and *In re J.L.S.*, 610 P.2d 1294 (Utah 1980)—to support his argument that the evidence was insufficient to support the jury's verdict. However, both of those cases were decided under a different version of the forcible sexual abuse statute than the one that was applicable at the time of Leota's conduct. *Compare In re L.G.W.*, 641 P.2d at 129 (citing the forcible sexual abuse statute applicable at the time), *and In re J.L.S.*, 610 P.2d at 1295 (same), *with* Utah Code Ann. § 76-5-404(1) (LexisNexis 2012). For example, the statute in effect at the time of *In re L.G.W.* and *In re J.L.S.* criminalized the touching of only the "anus or any part of the genitals of another"—arguably a more difficult standard to meet in terms of proving that touching clothed breasts was of the same magnitude as touching the anus or the genitals—while the statute in effect at the time of Leota's conduct additionally criminalized touching of the buttocks or a female's breast. *Compare* Utah Code Ann. § 76-5-404(1) (Allen Smith Co. 1978), *with id.* (LexisNexis 2012). Further, in both cases, the relationship between the perpetrator of the abuse and the victim was not that of stepfather and stepdaughter, the relationship involved here. Both cases therefore have limited value in resolving Leota's sufficiency challenge.

¶24   In *State v. Robbins*, our supreme court explained that a conviction must be based on "substantial reliable evidence" and that while a trial court "must ordinarily accept the jury's determination of witness credibility, when the witness's testimony is inherently improbable, the court may choose to disregard it." 2009 UT 23, ¶¶ 14, 16, 210 P.3d 288 (cleaned up). "The inherent improbability doctrine has very limited applicability and comes into play 'only in those instances where (1) there are material inconsistencies in the testimony and (2) there is no other circumstantial or direct evidence of the defendant's guilt.'" *State v. Doyle*, 2018 UT App 239, ¶ 17, 437 P.3d 1266 (quoting *Robbins*, 2009 UT 23, ¶ 19); *see also State v. Prater*, 2017 UT 13, ¶ 38, 392 P.3d 398 (explaining that the court in *Robbins* reached its inherent improbability determination by relying on "inconsistencies in the [witness's] testimony *plus* the patently false statements the [witness] made *plus* the lack of any corroboration"). In this respect, "[t]he existence of any additional evidence supporting the verdict prevents the judge from reconsidering the witness's credibility." *Robbins*, 2009 UT 23, ¶ 19; *see also Prater*, 2017 UT 13, ¶¶ 36–43 (reiterating that the inherent improbability doctrine applies only if there is "no other circumstantial or direct evidence" of a defendant's guilt (cleaned up)).

¶25   Here, Leota claims that Victim's testimony was inherently improbable such that the jury could not have convicted him of forcible sexual abuse based on Victim's allegations of the touching. As support, Leota points to, among other things, certain alleged inconsistencies and falsities with respect to Victim's testimony about conduct other than that associated with the forcible sexual abuse conviction, as well as Victim's purported "reputation for dishonesty."

¶26   However, we conclude that Leota's inherent improbability challenge fails because there is evidence apart from Victim's testimony supporting Leota's conviction. The jury heard Detective testify that Leota confessed to him that he

inappropriately touched Victim's breasts over her clothing on the day of the incident. Indeed, Detective testified that although Leota initially denied the allegations, he eventually admitted that the incident occurred and he expressed recognition that his actions were wrong. Under the principles set forth in *Robbins* and *Prater*, the existence of this corroborative evidence, apart from Victim's testimony, soundly defeats Leota's inherent improbability challenge. *See Prater*, 2017 UT 13, ¶¶ 36–43; *Robbins*, 2009 UT 23, ¶¶ 16–19.

CONCLUSION

¶27   We conclude that there was sufficient evidence to support Leota's conviction for one count of forcible sexual abuse. On this basis, we affirm.

———————