**2021 UT App 137**

### THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TREVOR TIPPETS,
Appellant.

Amended Opinion*
No. 20190062-CA
Filed December 9, 2021

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 161900279

Brett J. Delporto, Attorney for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGE GREGORY K. ORME and SENIOR JUDGE KATE APPLEBY
concurred.[1]

---

* This Amended Opinion replaces the Opinion in Case No. 20190062-CA issued on July 15, 2021. After our opinion issued, the Appellee filed a petition for rehearing, and we called for a response. We grant the petition for the purpose of correcting Part III to reflect that the touching variant of the sexual abuse of a child statute does not require skin-to-skin contact.

1. Senior Judge Kate Appleby sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

HAGEN, Judge:

¶1　Trevor Tippets was convicted of two counts of aggravated sexual abuse of a child based on two incidents involving his stepdaughter. Tippets subsequently filed a motion for a new trial, contending that his counsel had been ineffective in several ways. The district court denied that motion, entering findings of fact and conclusions of law on each of Tippets's claims. Tippets renews three of those contentions on appeal and argues that the cumulative effect of defense counsel's errors merits a new trial. Because we conclude that counsel's performance was not deficient, we affirm Tippets's convictions.

## BACKGROUND[2]

### *The First and Second Incidents*

¶2　Tippets's convictions arise from two incidents involving his stepdaughter (the victim) that occurred about one year apart. In the first incident, the victim, who was eleven years old, was sleeping on the floor in her room when "Tippets came into [her] bedroom and laid next to [her] on the floor." He first put his hand down her pants and touched her vagina under her clothing. She testified that she then heard a sound she would never forget—"the sound of him unzipping the zip of his pants." Tippets then "pulled out his penis," grabbed the victim's hand while she pretended to be asleep, "put his hand over [hers] and . . . started stroking his penis with [her] hand using [his] hand as the guide." This lasted for five to ten minutes. The victim tried to squirm and pull her hand away, but Tippets "grabbed [her] hand again and put it right back on to his penis." This touch was

---

2. "We recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *Gregg v. State*, 2012 UT 32, ¶ 2, 279 P.3d 396 (cleaned up).

skin-to-skin, and she felt his penis harden. The victim remembered feeling "betrayed of [her] trust" and thinking, "[H]ow could you[?]" Tippets did not say anything to the victim on this occasion. Eventually, the victim "pretended to stretch and wake up" and locked herself in the bathroom and stayed there for the rest of the night.

¶3 By the time the second incident occurred, the victim had turned twelve and had moved into a friend's basement with Tippets and the rest of her family. The victim explained, "Since we moved around a lot, me and my brother had air mattresses and we decided to build an air mattress fort out of them" against the corner of a wall. She and her brother went to bed in the fort—the victim against a wall and her brother against one of the air mattresses—with space between them. About an hour after they went to bed, Tippets came into the fort and lay behind the victim, who was on her side with her arms crossed on her chest "like a dead person." Tippets lay behind her in a "spooning position," then put his hand over her hand on her breast, and "invited himself to caress [her] breasts for as long as he felt [he] needed, which was about two to five minutes." When he finished, Tippets moved the victim's hair from behind her ear, kissed her neck, and asked if she wanted to come watch a television show that she had asked to watch earlier that day. The victim testified that she felt especially concerned that this was occurring with her brother right behind them because Tippets "did not care who was around . . . he wanted to get what he wanted."

¶4 After eventually disclosing some details of the first incident to her mother and disclosing both incidents to her therapist, the victim told her story in a recorded interview with the Children's Justice Center (CJC). In that interview, the victim described Tippets putting her hand on his penis during the first incident but did not mention him putting his hand down her pants. She then described the second incident in which Tippets rubbed her back and then moved his hand around to the front,

on top of her own hand across her chest, but did not describe how he used her hands to fondle her breasts.

*Charges and Testimony*

¶5    After the CJC interview, the State charged Tippets with one count of aggravated sexual abuse of a child, based on the first incident. At Tippets's preliminary hearing, the victim elaborated on both incidents. First, she said that before Tippets unzipped his pants to pull out his penis during the first incident, he put his hand down her pants and rested it on her vagina. Describing the second incident, she testified that when Tippets put his hand over her hand, which was over her breast, he "was playing with [her] chest . . . squeezing it." After the preliminary hearing, the State amended Tippets's information to include a second count of aggravated sexual abuse based on the second incident.

¶6    The case proceeded to trial. In his opening statement, defense counsel said the victim likely would describe the first incident as Tippets putting his hand down her pants and resting it on her vagina and then forcing her to touch his penis and scrotum. On direct examination, however, the victim, who was now sixteen years old, did not make any reference to Tippets putting his hand down her pants or touching her vagina. Defense counsel confronted the victim on cross examination, asking her whether she remembered testifying at the preliminary hearing that Tippets put his hand down her pants during that incident. She confirmed that she did. Defense counsel did not specifically ask the victim whether Tippets rested his hand on her vagina, and she did not volunteer that information on the stand.

¶7    Regarding the second incident, defense counsel's opening statement described the victim's anticipated testimony as Tippets "squeez[ing] her hand [that was covering her breast] with his while [she was] fully clothed." The prosecutor's opening statement described the second incident as Tippets

placing his hand "on her shirt" and then "touch[ing] her breasts," but also predicted that the victim would testify that Tippets's "hand was on her breast . . . skin-to-skin."

¶8 When the victim testified about the second incident, she first described Tippets's hand as "under" her bra. But after defense counsel confronted her with her preliminary hearing testimony, she acknowledged that her previous testimony was correct, that her "hand was in between" his hand and her breast. The victim testified, "All I remember was that he was touching my breasts. With that refreshing my memory, I do remember that my hand was in between, but it still did not feel right with him using my hand as a barrier in between his hand and my breasts."

*Evidence Regarding the Other Allegation*

¶9 During the course of the investigation, the assigned detective received a tip about a separate "untoward or sexual" incident that may have occurred between Tippets and a stepdaughter from a previous marriage. The detective did not verify the report.

¶10 The victim's mother testified at trial. At the end of cross examination, defense counsel elicited the following testimony:

> Q: You have other children than [the victim], correct?
>
> A: Yes.
>
> Q: Okay. Are there any allegations of [Tippets] involving any untoward things involving the other children?
>
> A: Not that I'm aware of, no.

¶11     Before his redirect examination, the prosecutor asked for a bench conference. He told the court that he felt the foregoing exchange had opened the door to "allow the State to ask the witness then if she's aware of any type of abuse to any of his other children on his previous marriages as well." Defense counsel responded that he had been "careful to confine [his question] to her family." The court ultimately elected to dismiss the jury to discuss this possible evidence further. Once the jury was excused, the court continued,

> As I stated at sidebar, I understand the strategic reason for asking those questions of this witness [is] to impress upon the jury a notion that [Tippets] has not abused other kids and therefore . . . would not sexually abuse the alleged victim in this case.
>
> So the question is whether . . . asking [the victim's mother] about any other allegations regarding her children or other children opens the door for the State to then ask [her] as a follow-up question on redirect, "Are you aware of any other allegations of a sexual nature related to other children in relationship to [Tippets]?"

Defense counsel argued, "even if Your Honor does rule that this . . . opens the door to character evidence, we ask that you keep it out in that it is . . . highly prejudicial." The prosecution responded that the testimony elicited by defense counsel had "impresse[d] upon the jury that the [the victim] is not credible because there are no other incidents" and "boost[ed] the credibility of [Tippets] in the eyes of the jury."

¶12     The court then asked the prosecutor to speak with the victim's mother and proffer what he believed her testimony would be. After speaking with the victim's mother, however, the prosecutor stated that "it turns out that she is not aware of any other sexual allegations from [Tippets's] prior marriages" so the

State could not elicit that information from her. The court then asked if the State intended to "put on any evidence of any other abuse through any other witnesses," to which the prosecutor responded, "Even though the door may have been opened in regards to some disclosures, we do not have other witnesses that are going to be available, and frankly, we won't be able to overcome the hearsay objection."

¶13 The court again expressed concern that, if there are other allegations, the jury not be left with "an impression" that "there are in fact no other allegations." The prosecutor stated that he had spoken to the detective, and the detective was aware of and had documentation of the other allegation. The court then noted,

> [T]here was no prior 404(b) motion filed. And in fact . . . 404(c) does allow in . . . a criminal case, it indicates that the Court may admit evidence that the Defendant committed any other acts of child molestation to prove propensity. . . . [W]e haven't had a hearing on those things because it sounds like the State did not intend to admit that evidence. But that doesn't mean we couldn't have a hearing on those things in the middle of trial.

The court then asked, "is this going to continue to be an issue?" Defense counsel responded, "Not as far as we're concerned, Your Honor."

¶14 The court instructed the State that it could ask the detective whether he was aware of any other allegations of sexual abuse against Tippets, as long as the questions did not stray into hearsay. The court asked for defense counsel's position on the issue, and he responded, "That sounds fair, Your Honor. Especially in regards to not postponing the trial. . . . I don't want to do that. . . . To call [the other potential stepdaughter victim as a witness]."

¶15    After the victim's mother completed her testimony, the State called the detective to the stand. At the end of his direct examination, the State asked,

> Q: Did [your work on this case] include interviewing other people regarding the case?
>
> A: Yes, it did.
>
> Q: Based on your interview with other people involved, are you aware of other allegations of sexual abuse against the Defendant?
>
> A: Yes.
>
> Q: Do you know what is the relationship between the Defendant and other people that may have been sexually abused?
>
> A: Yes. I'm only aware of one other incident, but the relationship was a stepdaughter.
>
> Q: Do you have any information as to how old the stepdaughter was at the time?
>
> A: The stepdaughter was 16 years old.

Defense counsel did not ask for a limiting instruction regarding the admission of this testimony.

*New Trial Motion*

¶16    The jury convicted Tippets on both counts. With the assistance of new counsel, Tippets filed a motion for a new trial, contending that his counsel was ineffective in five ways, three of which he raises on appeal. Relevant to this appeal, he claimed defense counsel performed deficiently when he (1) introduced damaging testimony from the victim, (2) inadvertently opened

the door to other alleged misconduct, and (3) neglected to move for a directed verdict on count 2 relating to the second incident.

¶17 After a hearing, the district court denied the motion. The court found that defense counsel's "performance was above the *Strickland* standard" when he introduced potentially damaging testimony from the preliminary hearing where he "obtain[ed] acknowledgement from the victim of her inconsistent statement." (Citing *Strickland v. Washington*, 466 U.S. 688 (1984).) The court also found that defense counsel was not ineffective in questioning the victim's mother about other allegations. Even though the question resulted in "unintended consequence(s)," it was a legitimate "trial strategy" and counsel "was very specific to confine his question." Finally, the court found that defense counsel was not deficient in failing to move for a directed verdict on count 2 because "the Court would have denied" such a motion and "the State did present a prima facie case for count 2 [to] go in front of the jury for a verdict."

## ISSUE AND STANDARDS OF REVIEW

¶18 On appeal, Tippets asserts three of the ineffective assistance of counsel claims he raised in his motion for a new trial.[3] In deciding such claims, we rely on "the United States

---

3. Tippets also contends that the cumulative effect of his counsel's errors deprived him of a fair trial. We will reverse under the cumulative error doctrine if "(1) an error occurred, (2) the error, standing alone, has a conceivable potential for harm, and (3) the cumulative effect of all the potentially harmful errors undermines [our] confidence in the outcome." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 42, 428 P.3d 1038. On the other hand, if we determine "that either a party's claim did not amount to an error, or that the claim was an error but has no potential to cause harm on its own, the claim cannot weigh in favor of reversal

(continued…)

Supreme Court's decision in *Strickland v. Washington*," 466 U.S. 668 (1984), and "[t]here is no reason . . . to depart from the standard of review set out in *Strickland* simply because the appeal was preceded by a motion for new trial." *State v. Templin*, 805 P.2d 182, 185–86 (Utah 1990). "In a situation such as this, in which the trial court has previously held an evidentiary hearing on a motion based on ineffective assistance of counsel, such a claim presents a mixed question of law and fact." *State v. Burnside*, 2016 UT App 224, ¶ 18, 387 P.3d 570 (cleaned up). Therefore, we defer "to the trial court's findings of fact, but review its application of the appropriate legal principles to its factual findings for correctness." *Id.* (cleaned up).

ANALYSIS

¶19 Tippets claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel in three ways. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."). He contends that defense counsel performed deficiently when he (1) introduced testimony of an additional act in his attempt to impeach the victim, (2) inadvertently opened the door to evidence of another allegation and did not ask for a limiting instruction regarding the subsequent testimony, and (3) chose not to move for a directed verdict on count 2.

¶20 To prove his counsel was constitutionally ineffective, Tippets must "establish both that his trial counsel's 'performance

---

(…continued)

under the cumulative effects test." *Id.* Because we conclude that Tippets's defense counsel committed no errors that, on their own, had a conceivable potential for harm, there are no errors to accumulate and the cumulative error doctrine does not apply.

was deficient' and that 'the deficient performance prejudiced the defense.'" *State v. Lopez-Gonzalez*, 2020 UT App 15, ¶ 19, 459 P.3d 1049 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Because both prongs of the *Strickland* test must be met to establish ineffective assistance of counsel, we need not always address both prongs." *State v. Goode*, 2012 UT App 285, ¶ 7 n.2, 288 P.3d 306.

¶21　To meet the first prong, a defendant must establish that "trial counsel's performance was deficient in that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *State v. Boyer*, 2020 UT App 23, ¶ 62, 460 P.3d 569 (cleaned up). Because there are "countless ways to provide effective assistance in any given case," we begin with a "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (cleaned up). Here, because we conclude that counsel's representation of Tippets at trial did not fall below an objective standard of reasonableness and therefore was not deficient, we affirm Tippets's convictions.

## I. Victim's Prior Testimony

¶22　First, Tippets claims that defense counsel performed deficiently when he elicited damaging testimony from the victim. Specifically, he contends that it was objectively unreasonable to ask the victim about her preliminary hearing testimony that Tippets put his hand down her pants during the first incident, when she had not mentioned that fact in her direct examination at trial.

¶23　It is certainly debatable whether the potential value of impeaching the victim was worth the cost of eliciting that testimony. But "just as due process guarantees a fair trial, but not a perfect one, the right to counsel guarantees a competent attorney, not one whose performance is impervious to critique." *State v. Boyer*, 2020 UT App 23, ¶ 65, 460 P.3d 569 (cleaned up). Thus, a defendant does not meet his burden of showing deficient

performance by "simply identifying arguably better choices that trial counsel could have made." *See id.* If defense counsel's "actions could have been intended to further a reasonable strategy, a defendant has necessarily failed to show unreasonable performance." *See State v. Ray*, 2020 UT 12, ¶ 34, 469 P.3d 871.

¶24 We agree with the district court that an objectively reasonable attorney could choose to pursue this line of questioning as a matter of reasonable trial strategy. In a case such as this one, where the victim's credibility is paramount, a reasonable attorney might make the strategic decision to elicit testimony highlighting inconsistencies in the victim's various accounts. In light of the victim's preliminary hearing testimony, defense counsel reasonably expected the victim to testify that Tippets put his hand down her pants during the first incident and previewed that anticipated testimony for the jury in his opening statement—a choice that Tippets has not challenged on appeal. Given that the jury had already heard that allegation, a reasonable defense attorney could conclude that the potential value of impeaching the victim with her prior testimony outweighed any remaining prejudice.

¶25 Defense counsel's limited questioning on this topic further demonstrates that this was an objectively reasonable strategic choice. In particular, he did not question the victim about her allegation that Tippets had rested his hand on her vagina; rather, he ended questioning on the subject after she admitted previously saying that Tippets had put his hand down her pants. It was objectively reasonable to cast doubt on the victim's credibility by drawing attention to inconsistencies in her statements, especially where defense counsel avoided drawing attention to the most egregious alleged conduct. Regardless of whether there were "arguably better choices that trial counsel could have made," confronting the victim with her prior statement was not objectively unreasonable. *See Boyer*, 2020 UT App 23, ¶ 65.

## II. Prior Allegations

¶26 Tippets's second claim is that his counsel rendered ineffective assistance when he opened the door to testimony of a previous allegation of sexual abuse and did not ask for a limiting instruction once that testimony was admitted. We conclude that both decisions were objectively reasonable.

¶27 First, defense counsel did not perform deficiently by eliciting the mother's testimony that she had other children besides the victim and that she was not aware of "any allegations [against Tippets] involving any untoward things involving the other children." The victim was the only one of the mother's children who had accused Tippets of abuse; the prior allegation of abuse related to a stepdaughter from Tippets's previous marriage. Eliciting evidence that none of the victim's siblings had accused Tippets of inappropriate behavior allowed defense counsel to potentially cast doubt on the victim's account in a case that hinged entirely on her credibility. And by narrowly tailoring the question to relate only to the mother's own children, defense counsel minimized the risk that the question might open the door to evidence of the prior allegation. Such a strategy "is precisely the sort of calculated risk that lies at the heart of an advocate's discretion." *See Yarborough v. Gentry*, 540 U.S. 1, 9 (2003) (per curiam).

¶28 The fact that the district court ultimately disagreed and ruled that the question had opened the door to evidence of the prior allegation does not render defense counsel's performance objectively deficient. "Every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (cleaned up). It was by no means inevitable that defense counsel's carefully worded question would open the door to evidence of the prior allegation. And to "eliminate the distorting effects of hindsight," we cannot

allow the outcome of the court's evidentiary ruling to color our assessment of whether defense counsel's representation of Tippets fell outside the wide range of reasonable professional assistance. *See id.* "Our supreme court has instructed that the question of deficient performance is not whether some strategy other than the one that counsel employed looks superior given the actual results of trial. It is whether a reasonable, competent lawyer could have chosen the strategy that was employed in the real-time context of trial." *State v. Escobar-Florez*, 2019 UT App 135, ¶ 35, 450 P.3d 98, *cert. denied*, 458 P.3d 748 (Utah 2020) (cleaned up). Merely because an approach ultimately proves unsuccessful does not mean that a defendant has been deprived of effective assistance of counsel.

¶29    In addition, defense counsel's decision not to request a limiting instruction did not fall below an objective standard of reasonableness. "Choosing to forgo a limiting instruction can be a reasonable decision to avoid drawing attention to unfavorable testimony." *State v. Garrido*, 2013 UT App 245, ¶ 26, 314 P.3d 1014. Here, the evidence regarding the prior allegation was brief and unspecific. The detective testified that he was aware of only one other allegation of sexual abuse against Tippets and the incident involved a stepdaughter who was sixteen years old at the time. No other evidence was elicited, and the State never referred to the prior allegation again. A reasonably competent attorney could have concluded that requesting a limiting instruction would merely highlight the prior allegation that had been referred to only once and might otherwise receive little attention from the jury. Such a strategic decision in a case where there was a legitimate risk of "drawing attention to unfavorable testimony" does not constitute deficient performance. *See id.*

### III. Directed Verdict

¶30    Finally, defense counsel did not perform deficiently in deciding not to move for a directed verdict on count 2. Count 2 charged Tippets with aggravated sexual abuse of a child based

on the victim's testimony that Tippets had touched and squeezed her hands while her hands were covering her breasts. Because the State had presented sufficient evidence from which a jury could convict Tippets on an indecent liberties theory, a directed verdict would have been futile.

¶31   "If the State presents no competent evidence from which a reasonable jury could find the elements of the relevant crime, then trial counsel should move for a directed verdict and the failure to do so would likely constitute deficient performance." *State v. Baer*, 2019 UT App 15, ¶ 7, 438 P.3d 979 (cleaned up). On the other hand, "trial counsel's decision not to raise a futile motion for a directed verdict would not be deficient performance." *Id.* (cleaned up). Such a motion "is futile when, upon reviewing the evidence and all the inferences that can be reasonably drawn from it, a court can find that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Makaya*, 2020 UT App 152, ¶ 10, 476 P.3d 1025 (cleaned up).

¶32   Here, a motion for a directed verdict would have been futile because the State presented sufficient evidence on count 2 from which a reasonable jury could find the elements of aggravated sexual abuse of a child. Relevant to this case, a person commits sexual abuse of a child if "the actor touches the anus, buttocks, pubic area, or genitalia of any child, the breast of a female child, or otherwise takes indecent liberties with a child . . . with the intent to arouse or gratify the sexual desire of any person," and that offense is aggravated when "committed by an individual who occupied a position of special trust in relation to the victim." Utah Code Ann. § 76-5-404.1(2), (4), (4)(h) (LexisNexis 2017). Tippets does not challenge the evidence supporting either the required intent or the aggravating factor but argues that there was no evidence that he engaged in the prescribed conduct by touching one of the enumerated body parts. When asked if Tippets's hand touched her breast, the victim answered, "No, sir. . . . His hand was touching my hands

touching my breasts, so no." Tippets argues that "this conduct cannot constitute a criminal offense under Utah law" because the defendant did not "touch . . . the breast of a female child." *See id.* § 76-5-404.1(2).

¶33     But the State was not required to prove that Tippets made direct contact with the victim's breasts. The aggravated sexual abuse statute "prohibits two variants of conduct: touching of the enumerated body parts, and taking indecent liberties with another." *Cf. State v. Leota*, 2019 UT App 194, ¶ 16, 455 P.3d 1087 (addressing similar language in the forcible sexual abuse statute). At the time of Tippets's trial, the term "indecent liberties" was defined by caselaw to mean "activities of the same magnitude of gravity as that specifically described in the statute."[4] *State v. Lewis*, 2014 UT App 241, ¶ 11, 337 P.3d 1053 (cleaned up). The sexual abuse of a child statute specifically prohibits touching "the breast of a female child," Utah Code Ann. § 76-5-404.1(2), even if that touching is "accomplished through clothing," *id.* § 76-5-407(3). Therefore, to satisfy the indecent liberties element, the State was required to prove that Tippets's conduct was of the same magnitude of gravity as touching the breast of a female child, either under or over clothing.[5]

---

4. In 2019, the Utah legislature enacted a statutory definition of "indecent liberties." *See* Utah Code Ann. § 76-5-416 (LexisNexis Supp. 2020).

5. We note that the jury instructions incorrectly defined indecent liberties "as conduct that is as serious as touching *under clothing* the anus; buttocks; or genitals of a person; or the breasts of a female." (Emphasis added.) At the time of trial, the forcible sexual abuse statute required skin-to-skin contact with the enumerated body parts, but the sexual abuse of a child statute did not. *State v. Carrell*, 2018 UT App 21, ¶ 23 n.5, 414 P.3d 1030;

(continued…)

¶34 To determine whether the defendant's conduct is comparable to touching the enumerated body parts, the jury must consider the surrounding circumstances. *See State v. Carvajal*, 2018 UT App 12, ¶ 22, 414 P.3d 984 ("[T]he jury could find that Carvajal committed the crime of forcible sexual abuse, whether it was by touching her bare breast or by touching her breast through clothing if the surrounding circumstances made that comparable to touching her bare breast."). The jury instructions in this case provided the following guidance on how to assess the comparative seriousness of the conduct:

> In deciding whether conduct amounts to indecent liberties, use your judgment and common sense. You may consider factors such as: (1) the duration of the conduct, (2) the intrusiveness of the conduct against [the victim]'s person, (3) whether [the victim] requested that the conduct stop, (4) whether the conduct stopped upon request, (5) the relationship between [the victim] and the defendant, (6) [the victim]'s age, (7) whether [the victim] was forced or coerced to participate, and any other factors you consider relevant.

---

(…continued)
*see also* Utah Code Ann. § 76-5-407(3)(b) (LexisNexis 2017) (providing that, for sexual abuse of a child, "any touching, even if accomplished through clothing, is sufficient to constitute the relevant element of the offense"). This instructional error, which is not challenged on appeal, benefitted Tippets by effectively increasing the State's burden of proof at trial. But we assess the sufficiency of the evidence to support the conviction "against the elements of the charged crime, not against the erroneously heightened command in the jury instruction." *Musacchio v. United States*, 577 U.S. 237, 243 (2016).

¶35   Considering these factors, the State presented sufficient evidence from which the jury could convict Tippets of taking indecent liberties with the victim. At trial, the State presented evidence that Tippets was in a position of special trust as the victim's stepfather and that the victim was only twelve years old at the time of the second incident. The victim was in a vulnerable position, sleeping on the floor of a mattress fort when Tippets entered, laid down next to her, and began "spooning" her from behind. Tippets used the victim's hand under his hand to squeeze and caress her breasts "for as long as he felt [he] needed, which was about two to five minutes," after which he moved her hair, kissed her neck, and whispered in her ear. The victim testified that even though Tippets did not touch her breast skin-to-skin, it "still did not feel right" and made her uncomfortable.

¶36   A jury could find beyond a reasonable doubt that Tippets's conduct was comparable to the touching of a female child's clothed breast given the victim's age, her relationship with Tippets, the duration and intrusiveness of the touching, and the other surrounding circumstances. "It was the jury's prerogative to consider all the evidence presented, weigh the relevant factors on which it had been instructed, and make findings according to its assessment of the evidence." *See Leota*, 2019 UT App 194, ¶ 22. Because the State presented sufficient evidence to justify submitting count 2 to the jury, a motion for a directed verdict would have been futile and thus defense counsel did not perform deficiently by forgoing such a motion.

CONCLUSION

¶37   Tippets has not demonstrated that the challenged conduct by defense counsel fell below an objective standard of reasonableness. Because he has not established that defense counsel rendered deficient performance, we reject his claims of ineffective assistance of counsel and affirm Tippets's convictions.

————